**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK**

------------------------------------X

Weihua Du,                                    :        1:23-cv-06780

              Plaintiff,        :

              v.        :        **COMPLAINT**

Shalom Segelman; The Line DC Fund LLC; The  :        JURY TRIAL DEMANDED
Line DC Manager LLC; The Line DC Escrow
LLC; Yucaipa U.S. Hospitality Partners, LLC;
YAAF II Parallel (U.S. Hospitality Partners), Inc.;
Adams Morgan Managing Member LLC; Adams
Morgan Hotel Holdings LLC; Adams Morgan
Hotel JV LLC; Adam Morgan Hotel Members
LLC; Adams Morgan Hotel Owner LLC; Milou
Chesapeake Regional Center LLC; Yevgeny
Samokhleb; Liu & Bitterman PLLC

              Defendants.        :

------------------------------------X

PLAINTIFF, Weihua Du, by and through her attorneys, Anderson and Associates Law, P.C., alleges, on knowledge as to her own actions, and otherwise upon information and belief, as follows:

## NATURE OF THE ACTION

1.      Plaintiff is a Chinese foreign investor who participated in the U.S. Government's EB-5 investor immigration program ("**EB-5 Program**") to obtain lawful permanent resident status in the United States.

2.      At the time Plaintiff participated, the EB-5 Program rewards investors with permanent residency for the investors and their immediate families if they invest not less than $500,000 in a qualifying project that will create at least ten full time jobs in the United States.

3.      Plaintiff participated in an EB-5 project to develop a new approximately 220-room hotel tower, located on approximately 0.97 acres at 1780 Columbia Road, Washington, D.C. 20009, known as The Line DC Hotel (the "**Project**").

4.      To participate in the Project, Plaintiff purchased membership interest of $550,000 in the Line DC Fund LLC with $500,000 as the capital contribution (the "**Capital Contribution**") and $50,000 as the administrative fee (the "**Administrative Fee**", together with the Capital Contribution, the "**Investment Fund**").

**The Network of Companies**

5.      The Line DC Fund LLC (the "**Fund LLC**") is a New York limited liability company formed as an investment vehicle to solicit funds from EB-5 investors. The manager of the Fund LLC is the Line DC Manager LLC (the "**Manager LLC**"), a New York limited liability company. The Manager LLC's sole managing member is Shalom Segelman ("Shalom"), an individual residing in New York. The Line DC Escrow LLC (the "**Escrow LLC**"), a New York limited liability company, was formed to receive the investment of the membership interest as an escrow agent. The sole managing member of the Escrow LLC is Shalom.

6.      The Fund LLC was formed solely to loan all of the proceeds from this offering ("**Loan**") to Yucaipa U.S. Hospitality Partners, LLC ("**Yucaipa**") and YAAF II Parallel (U.S. Hospitality Partners), Inc. ("**YAAF**"). The Loan was made pursuant to a loan agreement dated May 26, 2016, defined in paragraph 70 below as the Loan Agreement.

7.      Yucaipa and YAAF, which indirectly and jointly own approximately 84% of the Project company, Adams Morgan Hotel Owner LLC (the "**Project Company**"), through various subsidiaries. Yucaipa and YAAF caused the Loan proceeds to be down streamed and contributed to the Project Company by and through each of (i) Adams Morgan Managing Member LLC ("**Adams Morgan Managing Member**"), (ii) Adams Morgan Hotel Holdings LLC ("**Hotel Holdings**"), (iii) Adams Morgan Hotel JV LLC ("**Hotel JV**") and (iv) Adams Morgan Hotel Member LLC ("**Hotel Member**").

**Shalom's Involvement**

8.      Shalom, as the sole managing member and as the alter ego of the Manager LLC, and the Manager LLC as the managing member of the Fund LLC, created the offering documents for this Project. Shalom and the Manager LLC also engaged a Chinese agency (the "**Agent**") to target and solicit investments from wealthy Chinese investors.

9.      The offering documents were in English without any translated copies in Mandarin even though the targeted clientele for this Project were Chinese investors who may potentially have limited proficiency in English. Although Plaintiff and the other Chinese investors involved in this Project are contractually obligated to seek independent attorney's advice, and the engagement of independent counsel will mitigate the risk of misunderstanding by Plaintiff and the other Chinese investors, this was independent of Shalom's obligation as the sole managing member of Manager LLC and Fund LLC, to ensure that information relating to the nature and structure of the investment and transactions contemplated by the Project, are accurately communicated to Plaintiff and the other Chinese investors, in a manner that can be reasonably understood by them.

**Plaintiff's Investment in The Project**

10.      Plaintiff entered this investment on July 30th, 2015 based on the solicitation information provided in the offering document dated January 1st, 2015 (the "**Original Signed Offering Documents**").

11.     Based on the Original Offering Documents, Plaintiff believed that the Investment Fund would remain in the Escrow LLC's escrow account and would be released to the Fund LLC when the Plaintiff's I-526 petition for a conditional permanent residency had been approved by USCIS. And if Plaintiff's I-526 petition is denied, Plaintiff's Investment Fund would be returned to Plaintiff, without interest, in redemption of Plaintiff's unit, and Plaintiff will have no further interest in the Fund LLC. The Manager LLC, as the Fund LLC's manager, shall also directly repay Plaintiff's full $50,000 Administrative Fee within 30 business days of receipt of a copy of USCIS notice that the Plaintiff's I-526 petition has been denied by the USCIS.

12.     On November 1, 2022, Plaintiff received a denial letter from USCIS stating that her I-526, immigrant petition by alien entrepreneur, has been denied. Plaintiff, through the Agent, promptly informed Shalom, the Manager LLC and the Fund LLC about the Denial Letter and requested for the refund of the capital contribution and administrative fee. However, despite numerous attempts, Plaintiff has not yet received the refund.

### Plaintiff's Discovery of Inconsistencies in The Documents

13.     In February 2023, Plaintiff retained a U.S. lawyer to request a refund. In March 2023, through her lawyer, Plaintiff got in touch, through her US lawyer, for the first time, with Yevgeny Samokhleb ("Yevgeny"), the immigration lawyer of Liu & Bitterman PLLC, who was in charge of her I-526 petition. Prior to Plaintiff's engagement of the U.S. lawyer, Plaintiff had only communicated with Yevgeny and Liu & Bitterman PLLC indirectly, through the Agent. It was only upon Plaintiff's engagement and communication with the U.S. lawyer that Plaintiff obtained a copy of her I-526 petition filing for the first time. In the process of reviewing the I-526 petition filing, Plaintiff made several significant discoveries.

14.     By comparing the Original Signed Offering Documents that Plaintiff retained with the one Yevgeny submitted to the USCIS, Plaintiff first discovered that the version of the offering documents submitted to the USCIS with Plaintiff's signature differed from the copy of the documents actually signed and retained by Plaintiff. It appears that the real signature page, bearing Plaintiff's signature and reflecting her understanding and agreement to the Original Signed Offering Documents, was found to have been inserted into a *new version* of the Original Signed Offering Documents without her knowledge or consent (the "**Amended Original Offering Documents**").

15.     In addition, Plaintiff also first discovered that USCIS did in fact, issue a Request for Evidence ("**RFE**") in 2019 to request for more evidence regarding her I-526 petition. The RFE pointed out missing project documentations, including the operating agreement of the Fund LLC dated September 2015, Subscription Documents, and Confidential Private Placement Memorandum dated September 30, 2015.

16.     The response to the RFE prepared by Plaintiff's immigration lawyer, Yevgeny and Liu & Bitterman PLLC revealed that there were two more different editions of the offering documents.

17.     Plaintiff signed the Original Signed Offering Documents on July 30th, 2015. Except the Amended Original Offering Document, the offering documents were revised in September

2015 (the **"Second Edition Offering Documents"**), and other investors participated after this revision. Another version of the offering documents was released in August 2017 (the **"2017 Offering Documents"**).

18.    The response to the RFE stated that the 2017 Offering Documents constituted the final version and superseded all prior offering documents. The response to the RFE also provided a notice of receipt and consent to the 2017 Offering Documents claimed to be "*signed*" by Plaintiff (the **"2017 Offering Consent Notice"**).

19.    However, Plaintiff has never seen or signed the 2017 Offering Consent Notice. She also did not receive any notice on any of the offering documents amendments. Plaintiff's signature was forged in the 2017 Offering Consent Notice.

20.    The 2017 Offering Documents significantly changed how the investment fund could be released from the escrow account to the Fund LLC and how the Investment Fund will be refunded to the investor if the investor's I-526 petition is denied by the USCIS. Specifically, under the terms of the 2017 Offering Documents, the investors whose I-526 petition was denied could only get the refund of their Investment Fund when the Fund LLC has adequate funds available to return the Investment Fund. That is, when the Loan has matured in 2036, provided that the borrowers repay the Loan.

21.    If Plaintiff had received and reviewed the Notice, she would not have chosen to continue her subscription since the 2017 Offering Documents significantly reduced the possibility of obtaining a refund.

22.    Within the past few months, through the retention of a U.S. lawyer, Plaintiff was able to uncover the forged signature on the Amended Offering Documents and the 2017 Offering Consent Notice.

23.    In addition to the forgery, Plaintiff also discovered the misuse of the Investment Fund when reviewing the Project documents. The discovery of a loan agreement executed between the Fund LLC as the lender, and Yucaipa and YAAF as the borrowers, which ran counter to the prevailing offering documents at that time, exposed the improper utilization of the investment proceeds.

24.    As a result of the forgery and misrepresentations, Plaintiff's Investment Fund has been released to the Project. Defendants Yucaipa, YAAF, Adams Morgan Managing Member, Hotel Holdings, Hotel JV, Hotel Members, and the Project Company were unjustly enriched from the Investment Fund that should be returned to Plaintiff.

## JURISDICTION

25.    Plaintiff brings her Complaint under federal diversity jurisdiction, 28 U.S.C. 1332, as the parties are completely diverse in citizenship and the amount in controversy exceed $75,000.00.

26.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this action arises under federal law, namely 15 U.S.C. §78(b), §78o, 78j, and 17 CFR Section 240.10b-5 thereunder.

27.     This Court has personal jurisdiction over Shalom Segelman and Yevgeny Samokhleb because they reside in New York, they conduct, operate, and carry on  businesses in New York from which this action arose, and they are engaged in substantial and not isolated activity within New York.

28.     This Court has personal jurisdiction over Liu & Bitterman PLLC because it was formed in New York, it conducts, operates, and carries on a business in New York from which this action arose, and it is engaged in substantial and not isolated activity within New York.

29.     This Court has personal jurisdiction over the Line DC Fund LLC, The Line DC Manager LLC, the Line DC Escrow LLC because they were formed in New York, they conduct, operate, and carry on a business in New York from which this action arose, and they have engaged in substantial and not isolated activity within New York.

30.     This Court has personal jurisdiction over Yucaipa, YAAF, Adams Morgan Managing Member LLC, Adams Morgan Hotel Holdings LLC, Adams Morgan Hotel JV LLC, Adam Morgan Hotel Members LLC, Adams Morgan Hotel Owner LLC because the governing law of the Loan agreement dated May 26, 2016 between the Fund LLC and Yucaipa and YAAF is the laws of the State of New York. Adams Morgan Managing Member LLC, Adams Morgan Hotel Holdings LLC, Adams Morgan Hotel JV LLC, Adam Morgan Hotel Members LLC, and Adams Morgan Hotel Owner LLC were unjustly enriched from the Loan proceeds.

31.     The Court has personal jurisdiction over Milou Chesapeake Regional Center LLC because the subject matter of the lawsuit, the investment offering, is governed by the laws of the state of New York.

## VENUE

32.     Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1) and (b)(2).

## PARTIES

33.     Plaintiff is an individual who is a citizen of China who signed a subscription agreement and paid a subscription price of $550,000 to become an investor in the Fund LLC in connection with the EB-5 Program.

34.     Upon information and belief, Shalom Segelman is an individual who resides in the State of New York. Shalom, through his many companies, which operate and conduct business in the State of New York.

35.     Upon information and belief, The Fund LLC, a New York limited liability company, is the limited liability company to which Plaintiff subscribed to in order to be an investor. Its principal place of business is located at 855 West Broadway, Woodmere NY 11598.

36.     Upon information and belief, The Manager LLC, a New York limited liability company, is the manager of the Line DC Fund LLC. Its principal place of business is located at 990 West Broadway, Woodmere NY 11598.

37.     Upon information and belief, The Escrow LLC, a New York limited liability company, is the limited liability company which acts as an escrow agent for the investment funds of the Line DC Fund LLC. Its principal place of business is located at 855 West Broadway, Woodmere NY 11598.

38.     Upon information and belief, Yucaipa, a Delaware limited liability company, is the majority owner of the Project Company.

39.     Upon information and belief, YAAF, a Delaware corporation, is the also the majority owner of the Project Company. Yucaipa and YAAF were the borrowers of the Loan. Through their ownership and control over the various subsidiaries (Adams Morgan Managing Member, Hotel Holdings, Hotel JV, and Hotel Member), the Loan proceeds were transferred from Yucaipa and YAAF to the Project Company.

40.     Upon information and belief, Adams Morgan Managing Member, a Delaware limited liability company, is the subsidiary of Yucaipa and YAAF, and the owner of Adams Morgan Hotel Holdings LLC. Adams Morgan Managing Member received the Loan proceeds from Yucaipa and YAAF and further distributed the Loan proceeds to Adams Morgan Hotel Holdings LLC.

41.     Upon information and belief, Hotel Holdings, a Delaware limited liability company, is the subsidiary of Adams Morgan Managing Member, and the owner of Adams Morgan Hotel JV LLC. Hotel Holdings received the Loan proceeds from Adams Morgan Managing Member and further distributed the Loan proceeds to Adams Morgan Hotel JV LLC.

42.     Upon information and belief, Hotel JV, a Delaware limited liability company, is the subsidiary of Hotel Holdings, and the owner of Adam Morgan Hotel Members LLC. Hotel JV received the Loan proceeds from Hotel Holdings and further distributed the Loan proceeds to Adam Morgan Hotel Member LLC.

43.     Upon information and belief, Hotel Member, a Delaware limited liability company, is the subsidiary of Hotel JV, and the owner of Adam Morgan Hotel Owner LLC. Hotel Member received the Loan proceeds from Hotel JV and further distributed the Loan proceeds to Adams Morgan Hotel Owner LLC.

44.     Upon information and belief, Project Company, a Delaware limited lability company, is the owner of the Project. Project Company is also the "Job Creating Entity" under this EB-5 Program. Project Company received the Loan proceed from Hotel Member and used the Loan proceeds in the Project development.

45.     Upon information and belief, Liu & Bitterman PLLC, a New York professional limited liability company, was the immigration lawyer of Plaintiff that Plaintiff retained for her EB-5 immigration matter.

46.     Upon information and belief, Yevgeny Samokhleb, an individual resides in New York, was the immigration lawyer of Plaintiff and an attorney of Liu & Bitterman PLLC. Yevgeny was responsible for Plaintiff's I-526 petition filing.

47.     Upon information and belief, Milou Chesapeake Regional Center LLC, a Maryland limited liability company, is the region center (the "**Region Center**") of this EB-5 Program. The Regional Center oversees and administers the offering's compliance with the EB-5 Program requirements.

# GENERAL ALLEGATIONS

## I.     EB-5 Program

48.     The U.S. Congress created the EB-5 program in 1990 to stimulate the economy through foreign investment and job creation. The program offers a pathway for these foreign investors to obtain permanent residency in the United States. At the time of the investments in question, foreign investors must invest a minimum of $500,000 in a U.S.-based new commercial enterprise, which is the Fund LLC here. The new enterprise would fund the development of government-approved EB-5 real estate projects or infrastructure projects that are capable of generating at least ten jobs per investor.

49.     Once investors subscribe and invest in the new commercial enterprise, they proceed to file a Form I-526 Immigration Petition for Alien Entrepreneur ("**I-526 Petition**") with the United States Citizenship and Immigration Services ("**USCIS**"). This petition, supported by the new enterprise's business plan and relevant documents, needs to demonstrate that the investment meets the requirements of the EB-5 program. After USCIS approves the I-526 Petition, the investor is granted conditional permanent residency, often referred to as a "conditional green card".

50.     Within two years of obtaining a conditional green card, the investor must submit a Form I-829 Petition by Entrepreneur to Remove Conditions on Permanent Resident Status to USCIS. This petition serves as the proof that the investor has met the investment and job creation requirements of the EB-5 Program, resulting in the conversion of their conditional green card into a permanent one.

## II.    The Line DC Hotel Project

51.     The Fund LLC is an investment vehicle formed by the Manager LLC to provide funding for the development of the Project, a new approximately 220-room hotel tower, located on approximately 0.97 acres at 1780 Columbia Road, Washington, D.C. 20009.

52.     The Fund LLC raised the Investment Fund from Chinese investors between 2015 and 2017 to finance the Project. On July 30th, 2015, Plaintiff entered into the Original Signed Offering Documents to become the Fund LLC's member based on the solicitation information provided in the Original Signed Offering Documents dated January 1st, 2015. Unbeknownst to Plaintiff, there were ***three*** more subsequent editions of the offering documents released after her subscription and her signatures were forged on two of those editions.

### III.    The Various Offering Document Editions and Forgery of Plaintiff's Signature

#### A.  The Original Signed Offering Documents

53.    The Original Signed Offering Documents is the version Plaintiff signed and retained on July 30th, 2015. It provides a loan model where the Fund LLC would make a loan of up to $50 million to Adams Morgan Managing Member to finance the Project.

54.    It provides that the Investment Fund would remain in the Escrow LLC's escrow account and would be released to the Fund LLC **when the subscriber's I-526 petition had been approved by USCIS.** And if the subscriber's I-526 petition is denied, the subscriber's Investment Fund would be returned to the subscriber, without interest, in redemption of the subscriber's unit, and the subscriber will have no further interest in the Fund LLC. The Manager LLC, as the Fund LLC's manager, shall also directly repay the subscriber's full $50,000 Administrative Fee within 30 business days of receipt of a copy of USCIS notice that the subscriber's I-526 petition has been denied by the USCIS.

55.    In addition, as the borrower, Adams Morgan Managing Member would sign a guaranty with each Subscriber under which it would agree that, if the borrower has received an Advance from the Subscriber's subscription amount, the borrower would directly repay the Subscriber's full $500,000 Capital Contribution directly to the account designated by the Subscriber within 30 business days of receipt of USCIS notice that the Subscriber's I-526 petition has been denied by the USCIS.

56.    The maturity date of the loan was December 31, 2020, or December 31, 2021, if extended. The loan may not be prepaid until the earlier of 48 months after the last advance or December 31, 2018.

57.    Plaintiff entered into the subscription agreement with a strong sense of trust and reliance on the refund provisions stated above in the Original Offering Documents. Absent any further communication from the Fund LLC and the Manager LLC, Plaintiff therefore maintained the belief that the Original Offering Documents she entered into were still in effect. Plaintiff provided the copy of the Original Offering Documents she retained to request for the refund. The Manager LLC, the Fund LLC, and the Escrow LLC, through their beneficial owner Shalom, denied Plaintiff's request.

#### B.  The Amended Original Offering Documents

58.    Date The Amended Original Offering Documents were the version submitted to the USCIS with Plaintiff's I-526 filing. Plaintiff was neither notified nor did she provide consent to these amendments. Shockingly, Plaintiff's signature page from the Original Signed Offering Documents was copied and inserted onto the Amended Original Offering Documents without her knowledge or authorization. This subsequently modified edition of the offering documents brought significant changes to when and how the Fund LLC could access the Investment Fund, making it more challenging for investors to obtain a refund. Additionally, it postponed the maturity date of the loan and reduced the likelihood of the loan being repaid:

- This edition stated that the Investment Fund could be released from the Fund LLC to the borrower of the loan once each investor's I-526 petition has been filed with the USCIS. In contrast, this is a significant departure from the terms outlined in the Original Signed Offering Documents, where the Investment Fund would remain in the Escrow LLC's escrow account and only be released to the Fund LLC upon approval of the subscriber's I-526 petition for a conditional permanent residency by the USCIS. The change in the release conditions for the Investment Fund raises concerns about the handling and utilization of the funds, and how it may affect investors' ability to obtain refunds or repayment of the loan.

- In this edition, if an investor's I-526 petition is denied, the Capital Contribution of $500,000 will only be returned to the investor by the Fund LLC "to the extent funds are available from the Fund LLC's Account." In contrast, this represents a significant change from the terms outlined in the Original Signed Offering Documents, where the subscription amount would be fully returned to the investor, regardless of whether the Fund LLC's account had sufficient funds or not. The alteration in the refund conditions introduces uncertainty for investors, as their ability to receive a full refund now depends on the availability of funds in the Fund LLC's account, potentially impacting the repayment process.

- The maturity date of the loan in this edition was set as either April 30, 2020, or April 30, 2021, if extended. Additionally, the loan was not permitted to be prepaid until the earlier of 48 months after the last advance or April 30, 2019. This also represents a significant change from the terms outlined in the Original Signed Offering Documents, where the earliest repayment date for the loan was stated as December 31, 2018.

59.    Should Plaintiff have received and reviewed the Amended Original Offering Documents, she would not have chosen to continue her subscription since the Amended Original Offering Documents significantly and materially changed how the Investment Fund was released to the Project, extended the repayment date of the loan, and reduced the possibility of obtaining a refund.

60.    The Manager LLC and Shalom, deliberately and knowingly extracted Plaintiff's signature page in the Original Signed Offering Documents and inserted it onto the Amended Original Offering Documents, without the knowledge and approval from the Plaintiff.

## C. The Second Edition Offering Documents

61.    The Second Edition Offering Documents was dated September 2015. Plaintiff first discovered this edition only after her refund request was denied in 2023. This edition was submitted to USCIS with Plaintiff's REF response filing. Plaintiff never received any notice and never signed on this edition. Upon information and belief, some other Chinese investors who joined this EB-5 Program entered into this Second Edition of the Offering Documents.

62.    This edition completely changed the funding model from the loan model to the equity model. In this edition, the Fund LLC would contribute all of the proceeds from the offering to Hotel Holdings LLC in the form of a "preferred equity" investment. Hotel Holdings LLC, through its various subsidiaries, would cause the preferred equity investment proceeds to be down streamed and contributed to the Project Company.

63.    Furthermore, investor's Investment Fund would be released under the following sequence: the Administrative Fee of $50,000 would be released to the Fund and be available for immediate use following the Fund's countersignature of the Subscription Agreement; the Capital Contribution of $500,000 would be released to the Fund LLC or its designee promptly following the USCIS's approval of the Member's I-526 Petition; provided, however, that the Fund and the Holding Company may permit an early release from the Escrow Account of the Capital Contribution Commitment based on the 80% release and 20% holdback model if so agreed in writing by the Fund and the Holding Company, in each party's sole discretion.

64.    Upon information and belief, a portion of the investors in the Project had signed the second edition of the offering documents unbeknownst to Plaintiff.

### D. The 2017 Offering Documents

65.    Date Plaintiff first discovered the 2017 Offering Documents only after her refund request was denied. This edition was submitted to USCIS with Plaintiff's RFE response filing. Plaintiff never received any notice and never signed on this edition. However, Plaintiff's signature **was forged in** the 2017 Offering Consent Notice.

66.    The 2017 Offering Documents' funding model reversed back to the loan model. However, this edition fundamentally changed how the Investment Fund could be released from the Fund LLC to the Project and nearly erased the possibility of getting a refund when investors' I-526 petition was denied.

67.    This edition provided that the Investment Fund would be available for immediate use by the Fund LLC following the Fund LLC's countersignature of the subscription agreement. In addition, the investors whose I-526 petition was denied could only get the refund when the Fund LLC has adequate funds available to return the Investment Fund. That is, if and when Yucaipa and YAAF repays the loan.

68.    Furthermore, in this edition, unlike the Original Signed Offering Documents and the Amended Original Offering Documents, there is no guarantee of a refund provided by the borrower.

69.    The 2017 Offering Documents were highly unfavorable to the investors. Had Plaintiff been notified and reviewed this edition, she would not have elected to continue with the subscription. However, Plaintiff never had the opportunity to review and make an informed decision as her signature was forged on the 2017 Offering Consent Notice. This unauthorized act deprived her of the chance to exercise her rights and make an informed choice regarding the subscription.

### IV.    Misuse of the Investment Fund

70.    In March 2023, Plaintiff discovered a signed loan agreement that was never provided to Plaintiff before.

71.    The loan agreement (the "**Loan Agreement**" or "**Loan**"), dated May 26, 2016, was executed between the Fund LLC as the lender and YAAF and Yucaipa as the borrowers.

72.    The Loan Agreement was inadequately drafted and heavily biased in favor of the borrowers, demonstrating a clear lack of fairness and equity.

73.    Section 2.1 of the Loan Agreement stipulated that "on the closing date, the Fund LLC shall fund an amount equal to One Million Five Hundred Thousand dollars to YAAF and Yucaipa." However, the Loan Agreement failed to specify the exact closing date. The definition section provided a vague explanation, stating that the closing date would occur "on the date when all conditions precedent set forth in Section 3.1 either have been satisfied or waived by the Lender." Strikingly, Section 3 of the Loan Agreement was intentionally omitted, leaving crucial conditions and details undisclosed.

74.    Moreover, this Loan Agreement was never agreed upon by the investors of this EB-5 Program. During the time when this Loan Agreement was entered, the offering documents were based on the Second Edition Offering Documents, wherein the funding structure had been modified to the equity model. This Loan Agreement is fundamentally inconsistent with the Second Edition Offering Documents.

75.    The material terms in this Loan Agreement also contradict the Original Signed Offering Documents and the Amended Original Offering Documents. Some of the contradictory material terms include:

- The borrower named in the Original Signed Offering Documents and the Amended Original Offering Documents is Adams Morgan Managing Member, not YAAF and Yucaipa.

- The Original Signed Offering Documents provided that the entire Investment Fund will not be released until the investor's I-526 has been approved by USCIS. The Loan Agreement did not have this condition to release the initial disbursement.

- The maturity date in the Original Signed Offering Documents was December 31, 2020, or December 31, 2021, if extended. However, the maturity date in the Loan Agreement is May 26th, 2036.

76.    It appears that the last amendment of the offering documents, the 2017 Offering Documents, was intended to conceal or mask this misuse of the Investment Fund. The 2017 Offering Documents reverts the funding model back to the loan model with the borrowers and loan terms in this edition being identical to the Loan Agreement. Moreover, the 2017 Offering Documents expressly referenced the Loan Agreement in the private placement memorandum and stated that as of the date of this memorandum, the Fund LLC has already advanced approximately

$1,500,000 under the Loan Agreement. This confirmation in the documents indicated that the Investment Fund had indeed been misused, as the loan proceeds were sourced from the Investment Fund.

77.    The revelation of forgery and fraud came to light only in March 2023 when Plaintiff engaged a U.S. lawyer to access her I-526 petition file and review the Project.

## COUNT ONE

## FRAUD

## (As against The Fund LLC, The Manager LLC and Shalom)

78.    Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

79.    Shalom, as the sole managing member and as the alter ego of the Manager LLC, and the Manager LLC as the managing member of the Fund LLC, created the offering documents for this Project, including the Original Signed Offering Documents, the Amended Original Offering Documents, the Second Edition Offering Documents, and the 2017 Offering Documents.

80.    Plaintiff's investment in the Fund LLC was made in justifiable reliance to Plaintiff's detriment on the Fund LLC, the Manager LLC and Shalom's fraudulent conduct. The fraudulent conduct arose from the misrepresentations in the Original Signed Offering Documents reflecting the following material misstatements:

- The Investment Fund would remain in the Escrow LLC's escrow account and would be released to the Fund LLC for its use **when the investors' I-526 petition for a conditional visa has been approved by USCIS.**

- If the investor's I-526 petition is denied, the Investment Fund would be returned to the investor without any condition.

- The borrower would be Adams Morgan Managing Member.

- The borrower would sign a guaranty with the investors to directly repay the full $500,000 Capital Contribution when the investor's I-526 petition has been denied by the USCIS.

- The maturity date of the loan was December 31, 2020, or December 31, 2021, if extended. The loan may not be prepaid until the earlier of 48 months after the last advance or December 31, 2018.

81.    Moreover, the Fund LLC, the Manager LLC and Shalom, intentionally and knowingly forged Plaintiff's signature on two subsequent versions of the offering documents, namely, the Amended Original Offering Documents and the 2017 Offering Documents. They went as far as extracting the Plaintiff's signature page from the Original Signed Offering

Documents and illicitly inserting it onto the Amended Original Offering Documents, all without her knowledge or authorization. This deceptive behavior extended to forging Plaintiff's signature on the 2017 Offering Consent Notice, again without her knowledge or authorization.

82.     Through the act of forging Plaintiff's signatures, the Fund LLC, the Manager LLC and Shalom willfully deceived her and manipulated her apparent consent to substantial alterations in the terms of her investment.

83.     Had Plaintiff been informed about the significant changes to the offering documents, she would not make the investment or choose to continue her investment in this Project.

84.     Moreover, the Fund LLC, the Manager LLC and Shalom's misdeeds extended beyond mere forgery, as they grossly misused the Investment Fund. The Manager LLC and Shalom caused the Fund LLC to enter into a Loan Agreement and disbursed the Investment Fund that materially deviated from any version of the then-existing offering documents:

- The borrower named in the Original Signed Offering Documents and the Amended Original Offering Documents is Adams Morgan Managing Member. Whereas the borrowers in the Loan Agreement are YAAF and Yucaipa.

- The Original Signed Offering Documents provided that the entire Investment Fund will not be released from the Escrow LLC to the borrower until the investor's I-526 has been approved by USCIS. The Loan Agreement did not have this condition to release the initial disbursement.

- The maturity date in the Original Signed Offering Documents was December 31, 2020, or December 31, 2021, if extended. However, the maturity date in the Loan Agreement is May 26th, 2036.

- The Second Edition Offering Documents adopted the "equity model" as the funding model where the Fund LLC would contribute all of the proceeds from the offering to Hotel Holdings LLC in the form of a preferred equity investment. The Loan Agreement is entirely contradictory to the Second Edition Offering Documents. However, the Second Edition Offering Document was the version that was in effect when the Loan Agreement was signed.

85.     This egregious misuse of the Investment Fund goes beyond a mere oversight or mistake. The intentional inconsistencies between the Loan Agreement and the multiple editions of offering documents are indicative of a calculated attempt to manipulate the Investment Fund. This fraudulent action demonstrates a breach of trust, a manipulation of investor expectations, and a clear disregard for their ethical and legal obligations.

86.     Plaintiff has incurred damages by signing the subscription agreement in the Original Signed Offering Document and investing in the Fund LLC, in an amount to be proven at trial but no less than $550,000.00.

87.     The Fund LLC, the Manager LLC and Shalom are jointly and severally liable for these losses individually and collectively.

## COUNT TWO

## SECURITIES FRAUD

## (15 U.S.C. Section 78j(b) & 17 CFR Section 240.10b-5)

## (As against the Fund LLC and the Manager LLC and Shalom)

88.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

89.     Shalom, as the sole managing member and as the alter ego of the Manager LLC, and the Manager LLC as the managing member of the Fund LLC, created the offering documents for this Project, including the Original Signed Offering Documents, the Amended Original Offering Documents, the Second Edition Offering Documents, and the 2017 Offering Documents.

90.     The membership units offered for sale by the Fund LLC to Plaintiff are securities subject to the Federal Securities Laws.

91.     In the Original Signed Offering Documents, Defendants the Fund LLC, the Manager LLC, and Shalom misrepresented the following material misstatements:

- The Investment Fund would be held in the Escrow LLC's escrow account and would be released to the Fund LLC for its use when the investors' I-526 petition for a conditional visa has been approved by USCIS.

- If the investor's I-526 petition is denied, the Investment Fund would be returned to the investor without any condition.

- The borrower would be Adams Morgan Managing Member.

- The borrower would sign a guaranty with the investors to directly repay the full $500,000 Capital Contribution when the investor's I-526 petition has been denied by the USCIS.

- The maturity date of the loan would be December 31, 2020, or December 31, 2021, if extended. The loan might not be prepaid until the earlier of 48 months after the last advance or December 31, 2018.

92.     The Fund LLC, the Manager LLC, and Shalom, failed to disclose that there were three more versions of the offering documents with various material changes that were submitted to the USCIS on behalf of Plaintiff. Furthermore, the Fund LLC, the Manager LLC, and Shalom

engaged in the forgery of Plaintiff's signature on the Amended Original Offering Documents and the 2017 Offering Consent Notice, in an apparent effort to mask the misrepresentations present in the Original Signed Offering Documents. This intentional concealment of the misstatements present in the Original Signed Offering Documents also establishes the Fund LLC, the Manager LLC, and Shalom's knowledge of their wrongful and fraudulent acts.

93.     In addition, The Fund LLC, the Manager LLC, and Shalom misused the Investment Fund by entering into the Loan Agreement and disbursed the Investment Fund that contradicted any of the then-existing offering documents:

- The borrower named in the Original Signed Offering Documents and the Amended Original Offering Documents is Adams Morgan Managing Member, whereas the borrowers in the Loan Agreement are YAAF and Yucaipa.

- The Original Signed Offering Documents provided that the entire Investment Fund will not be released from the Escrow LLC to the borrower until the investor's I-526 has been approved by USCIS. The Loan Agreement did not have this condition to release the initial disbursement.

- The maturity date in the Original Signed Offering Documents was December 31, 2020, or December 31, 2021, if extended. However, the maturity date in the Loan Agreement is May 26th, 2036.

- The Second Edition Offering Documents adopted the "equity model" as the funding model where the Fund LLC would contribute all of the proceeds from the offering to Hotel Holdings LLC in the form of a preferred equity investment. The Loan Agreement is entirely contradictory to the Second Edition Offering Documents.

94.     These misrepresentations and omissions were made with scienter and were intended to induce investors to purchase the Fund LLC's interests. As a result of these misrepresentations and material omissions as to which the Fund LLC, the Manager LLC and Shalom had a duty to speak but failed to do, Plaintiff suffered damages.

95.     By engaging in the conduct above, The Fund LLC, the Manager LLC, and Shalom violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. 15 U.S.C. § 10(b) and 17 CFR § 240.10b-5.

96.     Plaintiff incurred damages by signing the subscription agreement in the Original Signed Offering Document and investing in the Fund LLC, in an amount to be proven at trial but no less than $550,000.00.

97.     The Fund LLC, the Manager LLC and Shalom are jointly and severally liable for these losses individually and collectively.

## COUNT THREE
## BREACH OF CONTRACT
### (As against the Fund LLC and the Manager LLC)

98.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

99.     The Manager LLC as the managing member of the Fund LLC entered into the subscription agreement with Plaintiff on July 30th, 2015, based on the information in the Original Signed Offering Documents.

100.    However, in March 2023, Plaintiff discovered that the Manager LLC unilaterally amended the offering documents three times without notification or authorization. The Manager LLC also forged Plaintiff's signature on the Amended Original Offering Documents by extracting the signature page of the Original Signed Offering Documents and inserting it in the Amended Original Offering Documents. In 2017, when the 2017 Offering Documents was circulated to investors, the Manager LLC forged Plaintiff's signature again on the 2017 Offering Consent Notice. The Manager LLC provided the forged documents to the USCIS as part of Plaintiff's response to the USCIS's RFE filing.

101.    Pursuant to Section 4(d) of the subscription agreement dated July 30th, 2015, the subscription agreement expressly states that the private placement memorandum of the fund supplements the subscription agreement, thereby incorporating the terms of the private placement memorandum as part of the subscription agreement, collectively referred to as the "**Contract**".

102.    As a result of these unilateral amendments and the forgery, the Manager LLC breached the Contract.

103.    The Manager LLC and the Fund LLC further breached the contract by misusing the Investment Fund. The Manager LLC caused the Fund LLC to enter into a Loan Agreement and disbursed the Investment Fund that materially deviated from any version of the then-existing offering documents:

- The borrower named in the Original Signed Offering Documents and the Amended Original Offering Documents is Adams Morgan Managing Member. However, the Loan Agreement designates YAAF and Yucaipa as the borrowers.

- The Original Signed Offering Documents provided that the entire Investment Fund won't be released from the Escrow LLC to the borrower until the investor's I-526 has been approved by USCIS. However, the Loan Agreement did not have this condition to release the initial disbursement.

- The maturity date in the Original Signed Offering Documents was December 31, 2020, or December 31, 2021, if extended. However, the maturity date in the Loan Agreement is May 26th, 2036.

- The Second Edition Offering Documents adopted the "equity model" as the funding model where the Fund LLC would contribute all of the proceeds from the offering to Hotel Holdings LLC in the form of a preferred equity investment. The Loan Agreement is entirely contradicted to the Second Edition Offering Documents.

104.    As a direct and proximate cause of these breaches, Plaintiff has been harmed in the amount to be proven at trial but not less than $550,000.00.

105.    The Fund LLC, the Manager LLC are jointly and severally liable for these losses individually and collectively.

## COUNT FOUR

## BREACH OF FIDUCIARY DUTY

## (As against Regional Center, the Manager LLC, The Escrow LLC, Shalom)

106.    Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

107.    As the regional center entrusted by Plaintiff to oversee and administer the offering's compliance with the Program requirements, the Regional Center owed Plaintiff the duty to exercise candor, good faith, and loyalty in the management and administration of the EB-5 Investor investment.

108.    As the manager of the Fund LLC entrusted by Plaintiff to manage the investment, the Manager LLC owed Plaintiff a fiduciary duty to exercise candor, good faith and loyalty in the management and administration of the Plaintiff's investment.

109.    As the escrow agent of the Fund LLC entrusted by Plaintiff to hold the investment, the Escrow LLC owed Plaintiff a fiduciary duty to exercise candor, good faith and loyalty in the safeguard of the Plaintiff's investment.

110.    Shalom, as the promoter of the investment in the Project and the sole managing member of the Manager LLC, owed Plaintiff a fiduciary duty of good faith, loyalty and full and fair disclosure of all material facts and information relevant to the investment decision presented to Plaintiff.

111.    Regional Center, the Manager LLC, the Escrow LLC and Shalom breached their respective fiduciary duties to Plaintiff and aided and abetted each other in doing so by concealing and failing to disclose the true structure of the investment and by failing to, as set forth above, make full, fair and misleading disclosures concerning the investment in the Project.

112.    As set forth in detail above, Regional Center, the Manager LLC, the Escrow LLC and Shalom breached their fiduciary duties by:

- Failing to ensure that the Original Offering Documents provided to Plaintiff accurately and fairly recounted the risks and the loan structure that was contemplated at the time of the solicitation or implementation.

- Failing to safeguard Plaintiff's investment through the unsecured and unfavorable Loan.

- Failing to keep books and records properly.

- Failing to make certain that the offering materials fairly and correctly set forth the real terms and conditions and structure of the investment.

- Failing to obtain the consent of Plaintiff after the offering documents changes fundamentally.

- Failing to refund the Investment Fund when Plaintiff's I-526 was denied.

113.    Shalom's breach of fiduciary duty towards Plaintiff is also evident through his conflict of interest. Operating as the alter ego and sole owner of both the Manager LLC and the Escrow LLC, Shalom's dual role inherently gave rise to a conflict of interest concerning the distribution of the Investment Fund. The Manager LLC and the Escrow LLC were corporate entities so extensively controlled by Shalom that Shalom was the alter ego of both entities. Furthermore, Shalom's authority under both the Manager LLC and the Escrow LLC allowed him to be solely in control of the distribution of the Investment Fund and Shalom, had in fact, acted in conflict with the proper discharge of his fiduciary duties by refusing Plaintiff's request for the refund.

114.    Regional Center, the Manager LLC, The Escrow LLC, and Shalom are jointly and severally liable.

115.    Plaintiff seeks money damages in an amount to be proven at trial, but not less than $550,000.00.

116.    Regional Center, the Manager LLC, The Escrow LLC, and Shalom should be ordered, furthermore, to disgorge all the ill-gotten gains and benefits they wrongfully obtained as a result of their breaches of fiduciary duty, including the fees, interest, profits, and commissions they have received from or in association with the investment.


## COUNT FIVE
## CIVIL CONSPIRACY

## (As against Regional Center, the Manager LLC, The Escrow LLC, Shalom)

117.    Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

118.     Regional Center, the Manager LLC, The Escrow LLC and Shalom, by agreement, conspired to defraud Plaintiff and breach the fiduciary duties owed to her. Regional Center, the Manager LLC, the Escrow LLC and Shalom agreed to undertake this course of action to cheaply and efficiently obtain the funds necessary to complete the Project while knowing they would not follow the representations made to Plaintiff and not act in the best interests of the Fund LLC or Plaintiff.

119.     Regional Center, the Manager LLC, the Escrow LLC and Shalom performed an overt act in pursuance of the conspiracy. Specifically, the Manager LLC and Shalom created and disseminated the offering documents and thereafter misused the Funds. The Escrow LLC released the investment fund in a manner that was inconsistent with the terms outlined in the offering documents. The Regional Center assisted in making representations to Plaintiff and receiving funds from Plaintiff.

120.     All of these foregoing acts were done in pursuance of the conspiracy against Plaintiff and did, indeed, further the conspiracy.

121.     As a result of the civil conspiracy perpetrated by Regional Center, the Manager LLC, the Escrow LLC and Shalom, Plaintiff have been damaged through her investment in the Project.

122.     Regional Center, the Manager LLC, the Escrow LLC and Shalom should be ordered to compensate Plaintiff's damages in an amount to be proven at trial, but not less than $550,000.00.

## COUNT SIX

## UNJUST ENRICHMENT

## (As against Shalom, the Manager LLC, Yucaipa, YAAF, Adams Morgan Managing Member, Hotel Holdings, Hotel JV, Hotel Members, Project Company)

123.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

124.     Shalom, as the sole managing member and as the alter ego of the Manager LLC, and the Manager LLC as the managing member of the Fund LLC, were charged with the operation of the business of the Project and its affairs and had control over the funds and accounts of the Fund LLC which were invested with it.

125.     Pursuant to the 2017 Notice of Amended Offering, the Fund LLC has distributed the proceeds of the origination fee (currently totaling $45,000) to the Manager LLC in consideration of the Manager LLC's services in connection with procuring the Loan. Shalom and the Manager LLC also gained from the administrative fee from the investors.

126.    Shalom and the Manager LLC, without valid justification or authorization, withdrew the Investment Fund via the Loan Agreement for their personal benefit and gain, and thus were unjustly enriched.

127.    The Loan Agreement was made in contradiction to any then-existing offering documents and was without valid justification or authorization. Thus, the Loan Agreement is not enforceable.

128.    As Borrowers of the Loan, Yucaipa and YAAF bore the responsibility to diligently examine the source and validation of the funds. As YAAF's subsidiaries that received the Loan proceeds, Adams Morgan Managing Member, Hotel Holdings, Hotel JV, Hotel Members, and Project Company bore the same responsibility, particularly given their direct involvement in the Project.

129.    If Adams Morgan Managing Member, Hotel Holdings, Hotel JV, Hotel Members, and Project Company had diligently scrutinized the active offering documents during the Loan Agreement's execution, they would have realized that the prescribed funding model was the "equity model," wherein the Fund LLC was mandated to allocate all offering proceeds to Hotel Holdings through a "preferred equity" investment. However, they neglected this crucial examination of the funds' origin and validation prior to entering into the Loan Agreement. Consequently, it would be a disservice to equity and moral rectitude to allow them to retain these funds. The recipients of the Loan proceeds, including Yucaipa, YAAF, Adams Morgan Managing Member, Hotel Holdings, Hotel JV, Hotel Members, and Project Company, were unjustly enriched as a result. It is against equity and good conscience to permit defendants to retain these monies.

130.    Adams Morgan Managing Member, Hotel Holdings, Hotel JV, Hotel Members, and Project Company should be ordered to disgorge and return the funds that they have obtained due to their unjust enrichment in an amount to be proven at trial but not less than $500,000.00.


## COUNT SEVEN

## MALPRACTICE

### (As against Yevgeny and Liu & Bitterman PLLC)

131.    Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

132.    Yevgeny and Liu & Bitterman PLLC, as Plaintiff's immigration lawyer who was responsible for Plaintiff's I-526 petition, owed Plaintiff a duty of care arising from the attorney-client relationship.

133.    By Yevgeny and Liu & Bitterman PLLC's representation, Yevgeny and Liu & Bitterman PLLC owed Plaintiff a duty of care to exercise professional skill commensurate with Yevgeny and Liu & Bitterman PLLC's expertise and superior legal skill, knowledge, and ethical standards.

134.    However, in the course of the representation of Plaintiff, Yevgeny and Liu & Bitterman PLLC breach his duty of care owed to Plaintiff by never directly contacted Plaintiff. All the communication was through Shalom and Manager LLC's paid Agents that were not associated with Yevgeny and Liu & Bitterman PLLC.

135.    Significantly, Yevgeny and Liu & Bitterman PLLC neglected to forward a copy of the I-526 petition filing or any subsequent filings to Plaintiff for her review prior to their submission to USCIS. An attorney in similar circumstances would have acted reasonably by seeking the Plaintiff's review and approval as there were material and substantial modifications to the terms that the Plaintiff signed and agreed to. However, Yevegny and Liu & Bitterman had failed to do so not just once, but on multiple occasions, failed to seek the Plaintiff's review and approval prior to the filing. Had Plaintiff received a copy of each filing before submission, she would find out the forgery of her signature.

136.    In the course of the representation of Plaintiff, Yevgeny and Liu & Bitterman PLLC also breach their duty of care owned to Plaintiff by failing to diligently examinethe authenticity of the signatures on the Amended Original Offering Documents and the 2017 Offering Consent Notice before he filed them with the USCIS.

137.    As a proximate cause of Yevgeny and Liu & Bitterman PLLC's breaches, Plaintiff suffered and continue to suffer harm and damages in an amount to be proven at trial but not less than $565,000.00. (the Investment Fund plus legal engagement fees Plaintiff paid to Yevgeny and Liu & Bitterman PLLC)

# COUNT EIGHT

## ACCOUNTING

### (As against the Manager LLC and Shalom)

138.    Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

139.    Shalom, as the sole managing member and as the alter ego of the Manager LLC, and the Manager LLC as the managing member of the Fund LLC, were charged with the operation of the business of the Project and its affairs and had control over the funds and accounts of the Fund LLC which were invested with it.

140.    Shalom and the Manager LLC have exclusive rights and power to manage, operate and control the company and to do all the things and make all decisions necessary or appropriate to carry on the business and affairs of the Fund LLC.

141.    Pursuant to the Fund LLC's operating agreement, the Manager LLC shall maintain or cause to be maintained compete and accurate books of account and make such records and books of account available for inspections by any member, or any member's duly authorized representative, during regular business hours and at the principal office of the Fund LLC, upon reasonable notice and for any purpose related to her ownership of Units.

142.    Plaintiff, through her U.S. lawyer, requested the books and records of the Fund LLC from Shalom in 2023. However, Shalom replied over the phone "what books and records? We do not have that."

143.    Shalom and the Manager LLC was thus charged with the receipt and oversight of the Fund LLC's financial affairs and each of the investments in the Fund LLC by each of its members and was charged with making reporting of same to the Fund LLC.

144.    Plaintiff seeks an accounting at Shalom and the Manager LLC's sole expense for the operations of and distributions made by the Fund LLC.

## COUNT NINE

## VIOLATION OF SECURITIES EXCHANGE ACT

## (15 U.S.C. 78o and 78j)

## (Against Shalom and the Manager LLC)

145.    Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

146.    15 U.S.C. §78o makes it unlawful for any broker or dealer to make use of any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security unless such broker or dealer is registered.

147.    The membership units offered for sale by the Fund LLC to Plaintiffs are securities subject to the Federal Securities Laws.

148.    Shalom, as the sole managing member and as the alter ego of the Manager LLC, and the Manager LLC as the managing member of the Fund LLC, each of them, aided and abetted in the use of Agents to solicit investment and sell membership interests in the Fund LLC. Shalom, the Manager LLC, and the Agents were not registered as brokers and dealers. Accordingly, Shalom and the Manager LLC are in violation of 15 U.S.C. §78o.

149.    15 U.S.C. §78j makes it unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce to use or employ any manipulative or deceptive devices in connection with the purchase or sale of any security. As set forth above in paragraphs, *inter alia*, 78, 79, 80, 89, and 90, Shalom and the Manager LLC used manipulative and deceptive devices to induce Plaintiff into purchasing membership interest in the Fund LLC. Accordingly, Shalom and the Manager LLC are in violation of 15 U.S.C. §78j.

150.    Plaintiff has been damaged by signing the subscription agreement in the Original Signed Offering Document and investing in the Fund LLC, in an amount to be proven at trial but no less than $550,000.00.

151.    The Fund LLC, the Manager LLC and Shalom are jointly and severally liable for these losses individually and collectively.

# COUNT TEN

## VIOLATION OF RACKETEERING INFLUENCE AND CORRUPT ORGANIZATION ACT

### (18 U.S.C. 1962)

### (Against all defendants)

152.    Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

153.    Each of the Defendants are persons as defined by 18 U.S.C. 1961 as each is an individual, corporation or limited liability company capable of holding a legal or beneficial interest in property.

154.    The Defendants worked together to funnel money to Yucaipa, YAAF, Adams Morgan Managing Member, Hotel Holdings, Hotel JC, Hotel Members and Project Company, and also worked together towards a common goal of funding the aforesaid entities through the pattern of racketeering activity that will be explored more fully below.

155.    The Defendants constitute an association-in-fact enterprise (the "Enterprise") which held a common purpose to defraud Plaintiff through her investment in the Project, where her investments eventually became Loan proceeds that substantially benefitted the Enterprise, with the intention for the Enterprise to benefit from these Loan proceeds for good, as the plan was to defraud and forge Plaintiff's signature so that Plaintiff will not be able to obtain a refund of her investment. The Enterprise's common purpose was for itself to benefit financially through illegal wire fraud and fraud in the sale of securities.

156.    Since at least 2015, the members of the Enterprise have engaged in conduct including illegal wire fraud and fraud in the sale of securities through their network of various entities constituting the Enterprise geared towards gathering resources and funneling finances into the Enterprise.

157.    The members of the Enterprise have ongoing relations with each other, directly or indirectly, through a network of ownerships link by co-ownerships of entities or related through contracts.

158.    The conduct perpetrated herein by the Enterprise constitutes "fraud by wire" within the meaning of 18 U.S.C. 1343 and is "racketeering activity" as defined by 18 U.S.C. 1961(1).

159.    Furthermore, as demonstrated above, the membership units offered for sale by the Fund LLC to Plaintiff are securities subject to Federal Securities Laws. Accordingly, the fraudulent scheme designed by the Enterprise constitutes fraud in the sale of securities as defined by 18 U.S.C. 1961(1).

160.    The repeated and continuous unlawful actions and conduct by the Enterprise constitutes a pattern of racketeering activity in violation of 18 U.S.C. 1962(c).

161.    The members of the Enterprise acted in concert and worked towards the common purpose of funding the Enterprise by defrauding Plaintiff and transferring the funds through the Enterprise.

162.    As demonstrated above, the Enterprise engaged in a scheme to defraud Plaintiff and enrich itself by taking funds acquired from the Plaintiff. Ultimately, this scheme was intended and did, in fact, enrich Yucaipa, YAAF, Adams Morgan Managing Member, Hotel Holdings, Hotel JC, Hotel Members and Project Company, to the detriment of the Plaintiff.

163.    The funds were transferred across state lines and through the stream of interstate commerce.

164.    The Enterprise members routinely engage in and utilize the instrumentalities of interstate commerce in daily business activities.

165.    Rather than responding to Plaintiff and refunding the funds to Plaintiff as the rightful owner, Shalom, the Manager LLC and the Fund LLC, did not respond and failed to allow Plaintiff to exercise her right to seek refund of the investment amount that she was legally entitled to.

166.    Plaintiff has and continues to be injured in its property due to the Enterprise's violation of 18 U.S.C. 1962(c) in an amount to be determined at trial but likely in excess of $550,000.00.

167.    The injuries to the Plaintiff directly, proximately, and in a reasonably foreseeable manner, resulted from or were caused by the Defendant's violations of 18 U.S.C. 1962(c) that involved the illegal transfer of funds through the Enterprise's members.

168.    Plaintiff also incurred damages from attorney's fees and costs associated with investigating the Defendants' unlawful conduct.

169.    Further, Plaintiff is entitled to treble damages under 18 U.S.C. 1964(d).

170.    As a result of this scheme, Plaintiff suffered damages in excess of $550,000.00 plus treble damages, attorney's fees, pre- and post-judgement interest, court costs, and expenses.

[SIGNATURE PAGE FOLLOWS]

**WHEREFORE**, PLAINTIFF requests judgment as follows:

A.  On the First Cause of Action, judgment in an amount to be proven at trial, but not less than $550,000.00;

B.  On the Second Cause of Action, judgment in an amount to be proven at trial, but not less than $550,000.00;

C.  On the Third Cause of Action, judgment in an amount to be proven at trial, but not less than $550,000.00;

D.  On the Fourth Cause of Action:

    a.  judgment in an amount to be proven at trial, but not less than $550,000.00,

    b.  judgment ordering all Defendants, jointly and severally, to relinquish all the gains and benefits they unlawfully acquired due to their breaches of fiduciary duty, including the fees, interest, profits, origination fees, membership distributions, and commissions that they have received from the Fund LLC or in connection with the investment in the Fund LLC.

E.  On the Fifth Cause of Action, judgment in an amount to be proven at trial, but not less than $550,000.00;

F.  On the Sixth Cause of Action, judgment ordering Defendants to disgorge and return the funds that they have obtained due to their unjust enrichment in an amount to be proven at trial;

G.  On the Seventh Cause of Action,

    a.  judgment in an amount to be proven at trial, but not less than $550,000.00,

    b.  judgment ordering all Defendants, jointly and severally, to disgorge all earnings, profits, compensation and benefits received by Defendants as a result of their malpractice, including the legal engagement fee of $15,000.00;

H.  On the Eighth Cause of Action, an accounting at Defendants' sole expense for the operations of and distributions made by the Fund LLC;

I.  On the Nineth Cause of Action, judgment in an amount to be proven at trial, but not less than $550,000.00;

J.  On the Tenth Cause of Action, judgement in an amount to be proven at trial, but not less than $550,000.00;

K.  Prejudgment interest at the legal rate since the date the Plaintiffs were entitled to the return of her investment;

L.  Punitive damages in an amount determined at trial;

M.  For general damages for emotional distress and mental anguish

N.  Award of reasonable attorneys' fees and costs; and

O.  Any such other and further relief as the Court may deem just and proper.

Dated: September 12, 2023
New York, New York

Respectfully submitted,

By: _____

Anderson and Associates Law, P.C.
y.anderson@aalawpc.com
646-452-9982
61 Broadway, Suite 2809
New York NY 10006
*Attorneys for Plaintiff*