**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
Weihua Du,

                        Plaintiff,                    **REPORT AND RECOMMENDATION**

        -against-                                     **23-CV-6780 (DG) (ST)**

Shalom Segelman; the Line DC Fund LLC;
The Line DC Manager LLC; the Line DC
Escrow LLC; Yevgeny Samokhleb; Liu &
Bitterman PLLC,

                        Defendants.
-----------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

        Weihua Du ("Plaintiff") brought this action on September 12, 2023, alleging ten claims

including fraud, civil conspiracy, breach of contract, breach of fiduciary duty, and malpractice

against two individual Defendants and twelve corporate Defendants related to a hotel investment

offering. Since that time, eight corporate Defendants have been voluntarily dismissed from the

action, leaving only Shalom Segelman and Yevgeny Samokhleb, as well as the Line DC Fund

LLC, the Line DC Manager LLC, the Line DC Escrow LLC (together, the "Line DC Defendants"),

and Liu & Bitterman PLLC, named herein. On December 27, 2023, Plaintiff requested a certificate

of default with respect to Segelman and the Line DC Defendants for failure to answer or otherwise

respond to the Complaint, which default was entered by the Clerk of Court on January 8, 2024. On

March 20, 2024, Plaintiff filed an Amended Complaint removing several of the dismissed

Defendants, removing one of the ten causes of action, and making minor changes to several factual

allegations. On April 30, 2024, Plaintiff filed the instant motion for default judgment pursuant to

Rule 55(b) of the Federal Rules of Civil Procedure ("FRCP") with respect to Segelman and the

Line DC Defendants, which was referred to this Court for a report and recommendation by the Honorable Diane Gujarati on May 3, 2024.

Defendants Yevgeny Samokhleb and Liu & Bitterman PLLC (together, "the Liu & Bitterman Defendants") are not subject to the motion for default judgment currently before this Court. Instead, the Liu & Bitterman Defendants appeared and responded to the Amended Complaint via a motion to dismiss on October 1, 2024, which motion was also referred to this Court for a report and recommendation by the Honorable Diane Gujarati on October 2, 2024.

For the reasons set forth below, the Court respectfully recommends that Plaintiff's motion for default judgment be DENIED WITHOUT PREJUDICE with leave to renew, and that the Liu & Bitterman Defendants' motion to dismiss be DENIED WITHOUT PREJUDICE with leave to renew.

## BACKGROUND

For purposes of a motion for default judgment, the Court is required to accept Plaintiff's well-pleaded factual allegations, except those concerning damages, as true. *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 188–89 (2d Cir. 2015) (per curiam) (citing *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012)); *Henry v. Oluwole*, 108 F.4th 45, 55 (2d Cir. 2024). As such, the following facts are drawn from Plaintiff's Amended Complaint.[1]

---

[1] As will be discussed, the certificate of default which forms the basis for this motion was premised upon a failure to answer or otherwise respond to the original, September 12, 2023, Complaint, the operative pleading at the time of its entry. *See* ECF No. 34; ECF No. 38; ECF No. 45; ECF 53-2; ECF No. 1. When the Amended Complaint was filed, that certificate of default became moot, and thus this motion is procedurally defective from the outset. *See, e.g.*, *Vasquez v. Young Chow Garden, Inc.*, No. 17 CIV. 5605 (PGG), 2018 WL 11452581, at *1 (S.D.N.Y. Nov. 16, 2018) (collecting cases denying motions for default judgment because amended complaint mooted prior entry of default). However, rather than summarily recommending that the motion be denied with leave to refile to cure this defect, the Court's review of the pleadings and motion papers has revealed several additional defects and raised several questions that should be cured and addressed should Plaintiff renew this motion. The Court will fully review these items. While

Plaintiff is a Chinese citizen who participated in the U.S. Government's EB-5 Program, a program which rewards foreign investors with permanent residency if they invest $500,000 or more in a project which will create at least ten full time jobs in the United States. Am. Compl. ¶¶ 1–2, 44. After making the requisite investment, the EB-5 Program requires foreign investors to petition the United States Citizenship and Immigration Services ("USCIS") for permanent residency by filing a Form I-526 ("I-526 Petition"). *Id.* ¶¶ 45–46. Upon review thereof, the USCIS issues a decision approving or denying the I-526 Petition. *Id.* ¶¶ 11–12, 44–46, 50–51.

Plaintiff's Amended Complaint contains a variety of allegations regarding the interrelation between the eleven original corporate Defendants and the nature of the investment at hand, many of which are not relevant to the instant motion. In pertinent part, Plaintiff alleges that Defendant Segelman manages the Line DC Defendants. *Id.* ¶¶ 5, 8–9, 35, 37, 50, 53, 80, 90, 100, 110, 112, 116, 127, 146–47, 150, 155. These three Line DC Defendants engaged an agency in China to identify and solicit investors for a development project to construct a hotel tower in Washington D.C., to be called "The Line D.C. Hotel" (hereinafter "the Project"). *Id.* ¶¶ 3, 5–8, 47–49. The investment fund solicited by the Line DC Defendants would then be loaned to several of the dismissed corporate Defendants to be used for the development of the hotel. *Id.* ¶¶ 6–7, 47–49.

To participate in the EB-5 Program, Plaintiff invested in the Project. *Id.* ¶¶ 1, 3–4. The Amended Complaint does not explain how Plaintiff learned of the investment—including whether Plaintiff was contacted by, or communicated with, the Chinese agency before entering into the investment[2]—nor does it explain how, when, or from whom Plaintiff received any of the relevant

---

the instant motion is technically premised upon the original Complaint, rather than drawing the facts from an inoperative pleading, the Court will rely upon the Amended Complaint, as any renewed motion for default judgment will be based upon that pleading.

[2] The Amended Complaint does allege that Plaintiff corresponded, at some point, with the Chinese agency, but all such allegations involve events that appear to have occurred after the investment paperwork was signed. *See* Am. Compl. ¶¶ 12–13.

paperwork, whether or when Plaintiff read the paperwork, why Plaintiff chose this investment, whether Plaintiff consulted with counsel regarding the investment, or who Plaintiff sent the paperwork to after signing it. The Amended Complaint merely alleges that the investment involved a purchase of a membership interest in the Line DC Fund LLC, that the membership interest was purchased via a capital contribution of $500,000 and a $50,000 administrative fee, and that the purchase was effectuated on July 30, 2015, and memorialized via a subscription agreement which Plaintiff personally signed. *Id.* ¶¶ 3–4, 10, 34, 44, 47–49, 87, 91, 95, 97, 100, 102, 154–56. Plaintiff alleges that, under the terms of the subscription agreement, Plaintiff was entitled to a full refund of the $550,000 investment if Plaintiff's I-526 Petition was denied by USCIS. *Id.* ¶¶ 11, 50–51, 53–54, 72, 81, 85, 92, 94, 104.

As discussed, the initial stage of the EB-5 Program involves a two-step process. The foreign investor must: (1) make the requisite investment; and (2) file the I-526 Petition with USCIS. With respect to the second step, Plaintiff alleges that attorney Yevgeny Samokhleb, of the firm Liu & Bitterman PLLC, filed an I-526 Petition on her behalf, but that Plaintiff never saw nor signed the I-526 Petition, and that Plaintiff's signature thereon was forged. *Id.* ¶¶ 13–14, 56, 75, 77, 135–37, 140, 143. The Amended Complaint does not explicitly allege who contacted the Liu & Bitterman Defendants, when they did so, or how the Liu & Bitterman Defendants obtained any of the requisite information to file the petition. However, Plaintiff alleges that she communicated with the Liu & Bitterman Defendants indirectly, through the Chinese agency. *Id.* ¶ 13. Thus, it might be inferred that the Chinese agency contacted the Liu & Bitterman Defendants and retained them on Plaintiff's behalf.[3] Plaintiff further alleges that she paid the Liu & Bitterman Defendants

---

[3] However, there are, at most, five allegations mentioning the Chinese agency, all of which are extremely vague, and it is not entirely clear that this inference can reasonably be drawn. Indeed, Plaintiff alleges that she paid legal fees to the Liu & Bitterman Defendants and makes no mention of the Chinese agency. *Id.* ¶ 144.

$15,000 in legal fees, but does not explain how she knew to remit this payment, the manner in which she remitted it, or when she did so. *Id.* ¶ 144. The Amended Complaint alleges that Liu & Bitterman "was in charge" of various subsequent steps in the immigration process, including "the interview conducted in the U.S. Embassy located in China," but does not allege that Plaintiff was ever interviewed, how Plaintiff learned of the interview, or when any such interview occurred. *Id.* ¶ 13. The Amended Complaint contains no further allegations regarding Plaintiff's involvement in the I-526 Petition process, except to indicate that, on November 1, 2022, Plaintiff received a letter from USCIS denying her I-526 Petition. *Id.* ¶ 12. Implicit in all of these allegations is an assumption that Plaintiff believed that USCIS was processing a petition for her to obtain residency in the United States under the EB-5 Program. However, it is unclear how Plaintiff could have reasonably believed that USCIS was processing a petition for her to obtain residency if she never saw nor signed any paperwork for them to do so, and does not allege having taken any steps to facilitate that process.

Plaintiff alleges that, upon receiving the denial letter from USCIS, she contacted Segelman and the Line DC Defendants, through the Chinese agency, to request a refund of her investment in accordance with the terms of the subscription agreement. *Id.* ¶ 12. However, Segelman and the Line DC Defendants did not provide Plaintiff with a refund. *Id.* ¶¶ 12, 53, 57, 61, 115–16. In February 2023, Plaintiff retained her current counsel to pursue a refund, and thereby obtained, for the first time, a copy of her I-526 Petition and subsequent filings submitted to USCIS, including responses to a Request for Evidence and a Notice of Intent to Deny that the Liu & Bitterman Defendants submitted on her behalf without her knowledge. *Id.* ¶¶ 13, 16–17, 19, 57, 61, 66, 101, 135, 137, 141.

Upon reviewing the I-526 Petition, Plaintiff discovered that the copy of the subscription agreement that was submitted to USCIS alongside the petition differed from the version she signed and contained a forged signature. *Id.* ¶¶ 15, 48–56, 75, 77, 82–83, 93. Plaintiff alleges, in detail, the terms of both versions and the differences between them. For present purposes, it is sufficient to note that the version submitted with the I-526 Petition decreased the likelihood that an investor would be able to successfully obtain a refund if the investor's I-526 Petition was denied. *Id.* ¶¶ 49–56. Moreover, upon reviewing the responses to USCIS's Request for Evidence and Notice of Intent to Deny, Plaintiff discovered that two subsequent modifications to the subscription agreement had been submitted, bearing dates of September 2015 and August 2017, which purported to be superseding modifications on consent of both parties, but which Plaintiff had never received nor consented to. *Id.* ¶¶ 17–20, 23, 48, 57–65. Plaintiff alleges that the August 2017 modification contained a forgery of her signature. *Id.* ¶¶ 19–20, 23, 48, 61, 65, 75, 77. Plaintiff alleges, in detail, the terms of these subsequent modifications and how these terms differed from the subscription agreement that Plaintiff signed. For present purposes, however, it is sufficient to note that the modifications further reduced the likelihood that an investor would be able to successfully obtain a refund if the investor's I-526 Petition was denied. *Id.* ¶¶ 21, 57–65.

In short, Plaintiff alleges that Segelman and the Line DC Defendants misrepresented the nature of the investment and forged her signature on various documents, and that she was thus defrauded of the money she invested. *Id.* ¶ 74.

## I.    Procedural History

On September 12, 2023, Plaintiff brought this action against Segelman, the Line DC Defendants, various other corporate Defendants who were involved in the development of the hotel, and the Liu & Bitterman Defendants, alleging various causes of action sounding in fraud,

contract, breach of fiduciary duty, conspiracy, malpractice, and securities law violations, to recover the $550,000 she invested as well as $15,000 in legal fees paid to the Liu & Bitterman Defendants. Compl., ECF No. 1. Segelman and the Line DC Defendants failed to answer or otherwise respond to the Complaint and, on December 27, 2023, Plaintiff requested a certificate of default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. ECF No. 34. The Clerk of Court entered default against Segelman and the Line DC Defendants for failing to answer or otherwise respond to the original Complaint on January 8, 2024. ECF No. 38. On March 20, 2024, however, Plaintiff filed her Amended Complaint. ECF No. 45. Since that time, Segelman and the Line DC Defendants have not answered or otherwise responded to the Amended Complaint. However, Plaintiff has not requested a certificate of default with respect to the new pleading. Instead, on April 30, 2024, Plaintiff filed a motion for default judgment against Segelman and the Line DC Defendants, attaching the certificate of default for the failure to answer or otherwise respond to the original Complaint. *See* ECF No. 53-2. On May 3, 2024, the motion was referred to this Court for a report and recommendation by the Honorable Diane Gujarati. *See* Referral Order dated May 3, 2024.

On October 1, 2024, the Liu & Bitterman Defendants responded to the Amended Complaint via a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *See* ECF No. 72. On October 2, 2024, that motion was also referred to this Court for a report and recommendation by the Honorable Diane Gujarati. *See* Referral Order dated October 2, 2024.

## LEGAL STANDARD[4]

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011); *see also City*

---

[4] As will be discussed, the Court cannot address the Liu & Bitterman Defendants' Rule 12(b)(6) motion on the merits because an examination of Plaintiff's motion for default judgment has revealed a potential jurisdictional defect which may bar this action from proceeding. Thus, the Court does not detail the standard applicable to Rule 12(b)(6) motions to dismiss in this opinion because the Court ultimately cannot apply such standard at this time.

*of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)).  First, the plaintiff must obtain an entry of default from the clerk of court pursuant to Rule 55(a). *Priestley*, 647 F.3d at 504–05 (citing Fed. R. Civ. P. 55(a)); *Mickalis Pawn Shop*, 645 F.3d at 128 (citing *Green*, 420 F.3d at 104). Second, the plaintiff must "seek a judgment by default under Rule 55(b)." *Priestley*, 647 F.3d at 505 (citing Fed. R. Civ. P. 55(b)); *see also Mickalis Pawn Shop*, 645 F.3d at 128 (citing *Green*, 420 F.3d at 104).

The clerk's entry of default under Rule 55(a) "does not by definition entitle plaintiffs to an entry of a default judgment" under Rule 55(b). *Bricklayers*, 779 F.3d at 187; *see also GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010) ("[A] plaintiff is not entitled to a default judgment as a matter of right."). In moving for a default judgment under Rule 55(b), a plaintiff must first establish that the court has subject matter jurisdiction. *MBC Ventures, LLC v. Miniventures of NY, Inc.*, No. 3:20-CV-762 (CSH), 2021 WL 3709808, at *5 (D. Conn. Aug. 20, 2021) ("[T]o obtain [a] default judgment, the [p]laintiff must first establish subject matter jurisdiction." (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 108 (2d Cir. 1997))); *see also KeyBank Nat'l Ass'n v. Nour Limo, Inc.*, No. 22CV1894EKRER, 2023 WL 2969386, at *3 (E.D.N.Y. Feb. 2, 2023); *Mickalis Pawn Shop*, 645 F.3d at 125–28 (addressing subject matter jurisdiction before determining whether district court abused discretion in deciding to enter default judgment).

Assuming the court has jurisdiction, it "may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers*, 779 F.3d at 187 (citing *Mickalis Pawn Shop*, 645 F.3d at 137); *see also Taizhou Zhongneng Imp. & Exp. Co., Ltd v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013) ("A default . . . only establishes a defendant's liability if th[e] allegations are sufficient to state a cause

of action against the defendant."). Thus, after establishing the basis for jurisdiction, the plaintiff must show that the "uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Shum v. Jili Inc.*, No. 17CIV7600RPKVMS, 2023 WL 2974902, at *8 (E.D.N.Y. Mar. 19, 2023) (quoting *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012)).

In assessing whether the plaintiff has made this showing, the court first accepts all well-pleaded factual allegations in the complaint, except those concerning damages, as true and draws all reasonable inferences in the plaintiff's favor. *Henry*, 108 F.4th at 55; *Bricklayers*, 779 F.3d at 189. In doing so, however, the court does not credit as true conclusory allegations in a complaint. *Henry*, 108 F.4th at 55; *see Priestley*, 647 F.3d at 506. The court then determines whether the facts establish the defendants' liability as a matter of law. *Henry*, 108 F.4th at 55 (collecting cases); *Priestley*, 647 F.3d at 506 (analyzing whether alleged facts established elements of cause of action).

The complaint must facially state a claim without resort to evidence outside of the pleadings, under the same standards applicable to a Rule 12(b)(6) motion to dismiss. *Grp. One Ltd. v. GTE GmbH*, 625 F. Supp. 3d 28, 57–58 n.16 (E.D.N.Y. 2022) (collecting cases declining to consider evidence outside the pleadings in assessing whether allegations establish liability for purposes of default judgment); *Am. Builders & Contractors Supply Co. v. CR1 Contracting, LLC*, 565 F. Supp. 3d 330, 341 (W.D.N.Y. 2021) (holding that contract submitted with motion for default judgment could be considered because contract was integral to complaint, using same standard applicable to Rule 12(b)(6) motions to dismiss); *Xiamen ITG Grp. Corp. v. Peace Bird Trading Corp.*, No. 19-CV-6524 (DLI) (ST), 2024 WL 5399245, at *1, *1 n.3 (E.D.N.Y. Aug. 30, 2024), *report & recommendation adopted*, (Order dated Sept. 26, 2024) (collecting cases applying,

in default judgment context, rule that documents attached to, incorporated in, or integral to pleading may be considered in assessing whether pleading states a claim, the same standard applicable to Rule 12(b)(6) motions). This is because "[t]he essence of Fed. R. Civ. P. 55 is that a plaintiff can obtain from a default judgment equivalent relief to[,] but not greater than[,] that it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations." *Henry*, 108 F.4th at 55 n.5 (quoting *Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 367 (S.D.N.Y. 2020)). However, the court may, in its discretion, investigate the basis for the facts alleged and "require proof" thereof. *Id.* at 55 (quoting *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). Thus, while the court credits the factual allegations in the complaint as true and assesses whether the complaint states a claim without resort to extrinsic evidence, the court may also require proof of those factual allegations via extrinsic evidence to satisfy itself that such facts would have been provable at trial. "Only after the district court is convinced that the facts meet the elements of the relevant cause of action—whether those facts are established by well-pleaded allegations or proven by admissible evidence—may the district court enter a default judgment." *Id.*

Nevertheless, "[t]he decision whether to enter default judgment is committed to the district court's discretion." *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015) (citing *Mickalis Pawn Shop*, 645 F.3d at 131). Thus, even when a complaint facially states a claim for relief, courts examine three factors, called the *Enron* factors, to determine whether to exercise this discretion.[5]

---

[5] Courts often consider the *Enron* factors first, before determining whether the allegations sufficiently state a claim. *See Grp. One Ltd.*, 625 F. Supp. 3d at 61 (collecting cases); *Mattel, Inc. v. Agogo Store*, No. 21CIV1507, 2022 WL 525698, at *6 (S.D.N.Y. Jan. 31, 2022), *report & recommendation adopted*, 2022 WL 524057 (S.D.N.Y. Feb. 22, 2022) ("Because all three factors have been satisfied, entry of default judgment is warranted. . . . [and] the question becomes whether Plaintiff's allegations, accepted as true, establish liability for their claims."). However, the *Enron* factors do not examine any issues threshold to the question of whether a complaint states a claim. *Cf. Grp. One Ltd.*, 625 F. Supp. 3d at 60–61 (describing *Enron* factors as "an issue separate from whether" the allegations state a claim). These tests may therefore be applied in either order. Here, an examination of whether the claims at issue are adequately stated has revealed that the Court may lack subject matter jurisdiction over this action. The Court must address the

*Grp. One Ltd.*, 625 F. Supp. 3d at 60–61 (collecting cases separately examining whether complaint stated a claim and *Enron* factors); *see also Henry*, 108 F.4th at 52 (referring to three factors as the "*Enron* factors"). Specifically, to "determin[e] whether to grant a default judgment, the court [examines] . . . : '(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party.'" *Grp. One Ltd.*, 625 F. Supp. 3d at 54 (quoting *Bricklayers*, 779 F.3d at 186); *Stokes v. MilkChocolateNYC LLC*, 681 F. Supp. 3d 226, 236 (S.D.N.Y. 2023) (same). "[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default [judgment] should be granted . . . , the doubt should be resolved in favor of the defaulting party." *Henry*, 108 F.4th at 51 (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)).

Once a court has determined that the entry of default judgment is proper, it must then determine how much, if any, to award in damages. *See Am. Builders*, 565 F. Supp. 3d at 343–44 (first deciding whether to enter default judgment before turning to question of damages); *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154–55 (2d Cir. 1999) (entry of default judgment does not necessarily establish damages); *Grp. One Ltd.*, 625 F. Supp. 3d at 80 (granting default judgment but finding that damages were insufficiently supported); *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527–28 (S.D.N.Y. 2012) (holding that, even when entry of default judgment is appropriate, "the court should decline to award any damages" if the plaintiff has failed to make a sufficient showing thereof (collecting cases)); *Ningbo Yang Voyage Textiles Co. v. Sault Trading*, No. 18CV1961ARRST, 2019 WL 5399973, at *5 (E.D.N.Y. Sept. 10, 2019), *report &*

---

jurisdictional question before it may address the merits questions presented by the *Enron* factors. *Hylton v. J.P. Morgan Chase Bank, N.A.*, 338 F. Supp. 3d 263, 272 (S.D.N.Y. 2018) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit ([i.e.,] subject-matter jurisdiction)." (citing *Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007))). The Court has reordered these requirements accordingly.

*recommendation adopted*, No. 118CV1961ARRST, 2019 WL 5394568 (E.D.N.Y. Oct. 22, 2019) (describing damages inquest as "a separate obligation"). To do so, "[t]he district court must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais*, 183 F.3d at 155. "[A] district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers*, 699 F.3d at 234. The plaintiff bears the burden of submitting sufficient evidence to demonstrate damages with reasonable certainty. *Stokes*, 681 F. Supp. 3d at 236 (citations omitted).

In addition to the procedural and substantive requirements under Rule 55 of the Federal Rules of Civil Procedure, a plaintiff moving for default judgment must demonstrate that the summons and complaint were properly served on the defaulting parties, establish compliance with the Servicemembers Civil Relief Act, and submit motions papers that comply with Local Civil Rules 7.1 and 55.2. *Jacome v. Optical 49, Inc.*, No. 120CV02615DGPK, 2021 WL 3375134, at *3–5 (E.D.N.Y. July 9, 2021), *report & recommendation adopted*, No. 20CV02615DGPK, 2021 WL 3373130 (E.D.N.Y. Aug. 3, 2021) (ruling that movant must establish compliance with local rules); *Diaz Saavedra v. Dom Music Box Inc.*, No. 21CV6051ENVRER, 2022 WL 20655809, at *2–6 (E.D.N.Y. Dec. 5, 2022), *report & recommendation adopted*, (Order dated July 7, 2023) (citing 50 U.S.C. § 3931(b)(1)); *see also Contino v. United States*, 535 F.3d 124, 126 (2d Cir. 2008) ("Local rules have the force of law, as long as they do not conflict with a rule prescribed by the Supreme Court, Congress, or the Constitution."). A movant's failure to demonstrate proper service, comply with the local rules, or comply with the Servicemembers Civil Relief Act warrant denial of the motion. *Mulligan Funding LLC v. Tommy Interior Contracting Corp.*, 741 F. Supp. 3d 1, 11 (E.D.N.Y. 2024) (ruling that failure to comply with local rules warrants denial of motion

(citing *Lugo v. Allstate Ins. Co.*, No. 19-CV-7150 (JMA) (JMW), 2022 WL 3928727, at \*5 (E.D.N.Y. Aug. 10, 2022), *report & recommendation adopted*, 2022 WL 3914981 (E.D.N.Y. Aug. 31, 2022))); *Diaz Saavedra*, 2022 WL 20655809, at \*6 (failure to comply with Servicemembers Civil Relief Act warrants denial); *Advanced Cap. Com. Grp., Inc. v. Suarez*, No. 09 CV 5558 DRH GRB, 2013 WL 5329254, at \*2 (E.D.N.Y. Sept. 20, 2013) (proper service is required to obtain default judgment).

## DISCUSSION

Before the Court is a motion by Plaintiff for an entry of default judgment against Segelman and the Line DC Defendants for failing to answer or otherwise respond to this action. *See* ECF No. 53. However, Plaintiff's motion is procedurally defective for a number of reasons. Moreover, Plaintiff has failed to meet her burden of establishing that the Court has subject matter jurisdiction over this action, and that the Amended Complaint adequately states claims for relief with respect to the causes of action at issue. As such, the Court, for the reasons that follow, respectfully recommends that Plaintiff's motion for default judgment be DENIED WITHOUT PREJUDICE with leave to renew to cure the issues addressed herein, to the extent they are curable.

Also before the Court is a motion by the Liu & Bitterman Defendants to dismiss Plaintiff's seventh cause of action for legal malpractice on the grounds that Plaintiff has failed to state a claim therefor pursuant to Rule 12(b)(6).[6] *See* ECF No. 72; ECF No. 72-1. However, the motion presents merits questions that the Court cannot reach absent subject matter jurisdiction. As a result, the Court respectfully recommends that the Liu & Bitterman Defendants' motion to dismiss be DENIED WITHOUT PREJUDICE with leave to renew until such time that the Court determines that it properly has subject matter jurisdiction over this action.

---

[6] The legal malpractice claim is the only cause of action against the Liu & Bitterman Defendants, and thus dismissal of this action would dismiss the Liu & Bitterman Defendants in full. *See generally* Am. Compl.

## I.    Plaintiff's Motion for Default Judgment.

In moving for default judgment against Segelman and the Line DC Defendants, Plaintiff has submitted: a notice of motion; a three-page affidavit sworn to by Plaintiff; a certificate of default entered by the Clerk of Court on January 8, 2024, pursuant to Rule 55(a); and four affirmations of service certifying that the motion for default judgment was served on Segelman and the three Line DC Defendants. *See* ECF No. 53.

Plaintiff's submission is procedurally defective and substantively inadequate for a variety of reasons. Plaintiff's motion for default judgment should be denied on the following grounds, all of which are independent, alternative grounds warranting dismissal: (1) Plaintiff has failed to comply with the Servicemembers Civil Relief Act; (2) Plaintiff has failed to obtain a valid entry of default under Rule 55(a) of the Federal Rules of Civil Procedure; (3) Plaintiff has failed to submit a valid certificate of default with the motion papers as required by Local Civil Rule 55.2(b)(1); (4) Plaintiff has failed to submit a copy of the pleading as required under Local Civil Rule 55.2(b)(2); (5) Plaintiff has failed to submit a proposed form of default judgment as required under Local Civil Rule 55.2(b)(3); (6) Plaintiff has failed to submit a memorandum of law as required under Local Civil Rule 7.1; and (7) Plaintiff has failed to meet her burden of showing that the Court has subject matter jurisdiction over this action. Moreover, while the Court has not yet assessed these issues in full on the merits, and they thus do not provide independent grounds warranting dismissal at this time, Plaintiff has also failed to adequately state a claim with respect to at least two of the causes of action asserted against Segelman and the Line DC Defendants, and has failed to establish damages with reasonable certainty.

### a.    *Plaintiff's Motion Fails to Comply with the Servicemembers Civil Relief Act.*

As an initial matter, Plaintiff's motion is procedurally defective in that it fails to comply with the Servicemembers Civil Relief Act. 50 U.S.C. § 3931(b)(1). "The Act requires a plaintiff seeking default judgment to 'file with the court an affidavit stating whether or not the defendant is in military service and showing necessary facts to support the affidavit.'" *Diaz Saavedra*, 2022 WL 20655809, at *5 (quoting *J&J Sports Prods., Inc. v. Vergara*, No. 19-CV-2382 (FB) (VMS), 2020 WL 1034393, at *5 (E.D.N.Y. Feb. 6, 2020), *report & recommendation adopted*, 2020 WL 1031756 (E.D.N.Y. Mar. 3, 2020)). "The affidavit must provide the specific facts necessary to support the conclusion stated, and may not be based on conclusory statements or on 'information and belief.'" *Id.* (quoting *Uribe v. Nieves*, No. 17-CV-5155 (RRM) (RER), 2018 WL 4861377, at *1 (E.D.N.Y. Sept. 26, 2018)). "Further, '[t]he non-military affidavit must be based not only on an investigation conducted after the commencement of an action or proceeding but also after a default in appearance by the party against whom the default judgement is to be entered.'" *Id.* (quoting *J&J Sports Prods.*, 2020 WL 1034393, at *6). "[T]he court lacks the power to excuse compliance with th[is] statute." *Mulligan Funding*, 741 F. Supp. 3d at 13 (quoting *Uribe*, 2018 WL 4861377, at *1). Thus, failure to comply with the statute alone warrants denial of a motion for default judgment. *Dominguez v. Hernandez*, No. 21 CIV. 7051 (MKB) (VMS), 2023 WL 2575224, at *19 (E.D.N.Y. Feb. 22, 2023), *report & recommendation adopted*, 2023 WL 2574876 (E.D.N.Y. Mar. 20, 2023) (collecting cases).

Here, the motion papers contain no indication that Plaintiff has made any attempt to investigate the servicemember status of the individual defendant who is in default, Segelman. *See* ECF No. 53. Thus, the Court respectfully recommends that Plaintiffs motion for default judgment be denied on the additional grounds that Plaintiff has failed to comply with the Servicemembers

Civil Relief Act. *See Sudilovskiy v. City WAV Corp.*, 22-cv-469 (DG) (RLM), 2022 WL 4586307, at *3 (E.D.N.Y. Sept. 29, 2022).

      b. <u>*The Certificate of Default Is Moot, and the Motion for Default Judgment Thus Fails to Comply with both Rule 55(a) of the Federal Rules of Civil Procedure and Local Civil Rule 55.2(b)(1).*</u>

"'If, . . . after a default has been entered against a defendant, a plaintiff files an amended complaint which becomes operative, the entry of default becomes moot,' and a motion for default judgment based on that default must be denied as moot." *Vasquez*, 2018 WL 11452581, at *1 (quoting *Michalski v. Semple*, No. 3:16-CV-2039 (VAB), 2018 WL 571848, at *6 (D. Conn. Jan. 28, 2018)) (collecting cases). Courts in this Circuit have routinely held that the subsequent filing of an amended complaint moots an entry of default with respect to a prior, inoperative complaint. *See, e.g.*, *Ramirez v. Clinton Panaderia, Inc.*, No. 20-CV-6143 (JS)(SIL), 2023 WL 2061413, at *4–5 (E.D.N.Y. Feb. 17, 2023); *Falls Lake Nat'l Ins. Co. v. DNA Plumbing Contractors, Inc.*, No. 20CV2798RJDRER, 2021 WL 3518279, at *3 (E.D.N.Y. May 4, 2021), *report & recommendation adopted*, 2021 WL 2702571 (E.D.N.Y. July 1, 2021). In so holding, courts have reasoned that the filing of an amended complaint restarts the clock for a defendant to answer or otherwise respond, and thus the clerk's entry of default for failure to answer or otherwise respond to a prior, inoperative complaint is of no effect. *See, e.g.*, *Allstate Ins. Co. v. Yadgarov*, No. 11-CV-6187 PKC VMS, 2014 WL 860019, at *7–13 (E.D.N.Y. Mar. 5, 2014). Because a moot certificate fails to establish the prerequisite entry of default under FRCP 55(a), a plaintiff may not properly move for default judgment under FRCP 55(b) on the basis thereof. *Yadgarov*, 2014 WL 860019, at *13.

      Moreover, at the time Plaintiff filed the instant motion, Local Civil Rule 55.2 provided that a "party seeking a judgment by default shall apply to the Court as described in Fed. R. Civ. P. 55(b)(2), and shall append to the application: (1) the Clerk's certificate of default, (2) a copy of

the claim to which no response ha[d] been made, and (3) a proposed form of default judgment."[7] Loc. Civ. R. 55.2(b) (effective July 11, 2011). The first requirement is not satisfied when the certificate attached to the motion has become moot due to the subsequent filing of an amended pleading. *Ramirez*, 2023 WL 2061413, at *5; *Seaford Ave. Corp. v. ION Ins. Co., Inc.*, No. 22-CV-3449 (JS)(LGD), 2022 WL 17669438, at *5 (E.D.N.Y. Dec. 14, 2022).

Here, Plaintiff obtained a certificate of default with respect to Segelman and the Line DC Defendants on January 8, 2024. ECF No. 38. That certificate of default, however, was based upon their failure to answer or otherwise respond to the original complaint, the operative pleading at the time of its entry. *See id.* Thus, when Plaintiff filed her Amended Complaint on March 20, 2024, the certificate of default became moot.[8] *See* ECF No. 45; *Vasquez*, 2018 WL 11452581, at *1 (collecting cases); *Ramirez*, 2023 WL 2061413, at *4–5 (collecting cases); *Falls Lake*, 2021 WL 3518279, at *3 (collecting cases); *Yadgarov*, 2014 WL 860019, at *7–13. Plaintiff has failed to request a certificate of default against Segelman and the Line DC Defendants for failing to answer or otherwise respond to the Amended Complaint, and has attached to the instant motion only the moot certificate of default. *See* ECF No. 53-2.

As a result, Plaintiff's motion is procedurally defective under both FRCP 55 and Local Civil Rule 55.2. First, Plaintiff has not obtained a valid entry of default under FRCP 55(a), and

---

[7] The current version of the rule differs in that it requires the movant to attach "an affidavit or declaration showing that . . . the clerk has entered default," rather than the certificate itself, and does not require the attachment of the claim to which no response has been made. *See* Loc. Civ. R. 55.2 (effective July 1, 2024). It does still require the submission of a proposed order. *Id.*

[8] When a defaulting defendant must be re-served with a new, amended pleading, that pleading does not become operative until such service is effectuated. *Yadgarov*, 2014 WL 860019, at *6–11. However, an amended pleading need only be served on a defaulting defendant when it asserts new claims against such defendant. Fed. R. Civ. P. 5(a)(2); *Yadgarov*, 2014 WL 860019, at *6–7. For the avoidance of doubt, Plaintiff's Amended Complaint removed one claim, removed several dismissed defendants, and made minor modifications to various factual allegations with respect to the remaining claims, but did not assert any new claims against Segelman or the Line DC Defendants. *See* ECF No. 46-1. Plaintiff was not required to serve the defaulting defendants with the Amended Complaint, and it thus became operative upon filing.

thus cannot properly move for default judgment under FRCP 55(b). *See Yadgarov*, 2014 WL 860019, at \*13; *see also* Fed. R. Civ. P. 55 (setting forth two-step process); *Priestley*, 647 F.3d at 504–05 (citing Fed. R. Civ. P. 55(a)) (same); *Mickalis Pawn Shop*, 645 F.3d at 128 (citing *Green*, 420 F.3d at 104) (same). Second, Plaintiff failed to attach a valid certificate of default to the motion in accordance with Local Civil Rule 55.2(b)(1). *See* Loc. Civ. R. 55.2(b)(1) (effective July 11, 2011); *Ramirez*, 2023 WL 2061413, at \*5 (holding that moot certificate of default is insufficient to satisfy requirement under Local Civil Rule 55.2(b)); *Seaford Ave. Corp.*, 2022 WL 17669438, at \*5 (same). Both procedural defects warrant denial of Plaintiff's motion. *See, e.g.*, *Vasquez*, 2018 WL 11452581, at \*1 ("If, . . . after a default has been entered against a defendant, a plaintiff files an amended complaint which becomes operative, the entry of default becomes moot, and a motion for default judgment based on that default must be denied as moot." (citations and quotations omitted) (collecting cases)).

To be sure, because of the due process concerns raised by default judgments, in assessing motions therefor, courts should resolve all doubts in favor of the defaulting party. *Henry*, 108 F.4th at 51; *see Yadgarov*, 2014 WL 860019, at \*11–13. Indeed, as courts have noted, failure to adhere to the requirements of FRCP 55 is not a mere technicality. *Yadgarov*, 2014 WL 860019, at \*13. Rather, in addition to ensuring due process protections, proper adherence to these requirements "avoid[s] later litigation challenging a default on a procedural abnormality." *Id.*

Because the entry of default upon which Plaintiff's motion is based has become moot, the Court respectfully recommends that Plaintiff's motion for default judgment be denied for failure to comply with FRCP 55(a) and Local Civil Rule 55.2(b)(1).

   *c. <u>Plaintiff's Motion Fails to Comply with Local Civil Rules 55.2 and 7.1.</u>*

"A motion for default judgment will not be granted unless the . . . [movant] adheres to all of the applicable . . . [local] rules." *Mulligan Funding*, 741 F. Supp. 3d at 11 (quoting *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Loc. 15, 15A, 15C & 15D, AFL-CIO v. Allstate Mapping & Layout, LLC*, No. 22-CV-1831 (PKC) (TAM), 2023 WL 1475389, at *1 (E.D.N.Y. Feb. 2, 2023)); *see Contino*, 535 F.3d at 126 ("Local rules have the force of law, as long as they do not conflict with a rule prescribed by the Supreme Court, Congress, or the Constitution."); *Diaz Saavedra*, 2022 WL 20655809, at *3 (ruling that failure to comply with Local Civil Rule 7.1 "alone is sufficient to warrant denial of the motion for default judgment" (quoting *Sarwar v. James Motel, Inc.*, No. 21-CV-27 (EK) (RER), 2022 WL 21817103, at *4 (E.D.N.Y. June 6, 2022))). In this District, motions for default judgment are governed by Local Civil Rules 55.2 and 7.1. *Mulligan Funding*, 741 F. Supp. 3d at 11–12; *J&J Sports Prods.*, 2020 WL 1034393, at *2 (citations omitted); *Diaz Saavedra*, 2022 WL 20655809, at *2–3; *Jacome*, 2021 WL 3375134, at *3. Plaintiff's motion fails to comply with Local Civil Rule 55.2(b)(2), Local Civil Rule 55.2(b)(3), and Local Civil Rule 7.1, and should therefore be denied.

### i. **Plaintiff Has Failed to Submit a Copy of the Pleading and a Proposed Form of Default Judgment, and the Motion Thus Fails to Comply with both Local Civil Rule 55.2(b)(2) and Local Civil Rule 55.2(b)(3).**

As discussed, at the time Plaintiff filed the instant motion, Local Civil Rule 55.2 required that a movant, in seeking a default judgment, "append to the application: (1) the Clerk's certificate of default, (2) a copy of the claim to which no response ha[d] been made, and (3) a proposed form of default judgment." Loc. Civ. R. 55.2(b) (effective July 11, 2011). The current version of the rule does not require the movant to attach a copy of the claim to which no response has been made, but does still require submission of a proposed order. *See* Loc. Civ. R. 55.2 (effective July 1, 2024).

As the Court explained in the foregoing discussion, Plaintiff failed to obtain or attach a valid certificate of default in accordance with the first requirement, which alone warrants denial of the motion. However, Plaintiff also failed to adhere to the second and third requirements. Specifically, Plaintiff, perhaps realizing that the pleading to which no response had been made was now inoperative, failed to attach a copy of either the original Complaint or the Amended Complaint. *See* ECF No. 53. Moreover, Plaintiff failed to attach a proposed form of default judgment in accordance with the third requirement. *See id.* Failures to submit the second and third items called for under Local Civil Rule 55.2(b) are likewise sufficient, on their own, to warrant denial of a motion for default judgment. *See, e.g.*, *Windward Bora, LLC v. Weiss*, 717 F. Supp. 3d 247, 258–59 (E.D.N.Y. 2024); *Fin. Servs. Vehicle Tr. v. Osmanaj*, No. 22 CV 7491 (RPK) (CLP), 2023 WL 7000935, at *2 (E.D.N.Y. Aug. 15, 2023); *Guangzhou Yongjia Garment Mfg. Co. v. Zoomers Inc.*, No. 19 CV 2759 (NGG)(LB), 2020 WL 5578936, at *5 (E.D.N.Y. Aug. 28, 2020), *report & recommendation adopted*, 2020 WL 5577706 (E.D.N.Y. Sept. 17, 2020) (collecting cases); *Yang Ming Marine Transp. Corp. v. JAC Shipping, Inc.*, No. 20CV1118FBRER, 2021 WL 7908014, at *2 (E.D.N.Y. Jan. 7, 2021) (collecting cases); *Burbon v. Needlepaint LLC*, No. 21CV1678EKRER, 2022 WL 21781622, at *3 (E.D.N.Y. Apr. 5, 2022) (collecting cases); *Commissioners of State Ins. Fund v. Hainesport Transportation Grp. LLC*, No. 23-CV-1169, 2024 WL 4457829, at *5 (E.D.N.Y. Oct. 10, 2024) (collecting cases).

While district courts have discretion to excuse failures to comply with local rules, *Contino*, 535 F.3d at 126, courts typically decline to do so where, as here, the motion papers contain multiple procedural defects. *See Dominguez*, 2023 WL 2575224, at *14–17; *see also Mulligan Funding*, 741 F. Supp. 3d at 12–13 ("'As harsh at it may seem,' courts in this district 'have repeatedly' denied motions for default judgment based on a movant's failure to adhere to Local Civil

55.2." (quoting *Lugo*, 2022 WL 3928727, at *5)). Indeed, the Court has already identified five procedural defects in Plaintiff's motion papers, and will identify additional defects in the discussion that follows. This array of defects militates in favor of denying this motion. The Court thus respectfully recommends that, in addition to denying Plaintiff's motion for failure to comply with the Servicemembers Civil Relief Act, FRCP 55(a), and Local Civil Rule 55.2(b)(1), that Plaintiff's motion be denied on the additional grounds that it fails to comply with Local Civil Rule 55.2(b)(2) and 55.2(b)(3).

### ii. Plaintiff Failed to Submit a Memorandum of Law, and Has Thus Failed to Comply with Local Civil Rule 7.1, and Failed to Establish the Court's Subject Matter Jurisdiction Over this Action.

Plaintiff's motion should also be denied on the grounds that it fails to comply with Local Civil Rule 7.1. Moreover, as will be discussed, absent the benefit of briefing, the Court cannot determine a valid basis for Plaintiff's federal claims, thus calling into question the Court's exercise of federal question jurisdiction over this action. Thus, the motion should further be denied because Plaintiff has failed to make a requisite showing that the Court's jurisdiction is proper.

Local Civil Rule 7.1 provides that "[a]ll motions," except for non-dispositive letter motions, "must include the following motion papers: (1) [a] notice of motion . . . ; (2) [a] memorandum of law, setting forth the cases and other authorities relied on in support of the motion, and divided, under appropriate headings, into as many parts as there are issues to be determined; [and] (3) [s]upporting affidavits and exhibits thereto." Loc. Civ. R. 7.1(a), (e) (effective January 2, 2025).[9] As discussed, at the time Plaintiff filed the instant motion, Local Civil Rule 55.2 provided that a "party seeking a judgment by default shall apply to the Court as described in Fed.

---

[9] The recent revisions to Local Civil Rule 7.1 reflected only minor edits to grammar and formatting. *See* Loc. Civ. R. 7.1(a) (effective October 15, 2021). The rule does not substantively differ from the version in effect at the time Plaintiff filed the instant motion.

R. Civ. P. 55(b)(2), and shall append to the application: (1) the Clerk's certificate of default, (2) a copy of the claim to which no response has been made, and (3) a proposed form of default judgment." Loc. Civ. R. 55.2(b) (effective July 11, 2011). Since that time, Local Civil Rule 55.2 has been amended, and now provides that, "any party seeking a default judgment must file . . . the papers required by Local Civil Rule 7.1, including a memorandum of law," as well as various attachments similar in kind to those required under the previous version of the rule. Loc. Civ. R. 55.2(a)(2) (effective July 1, 2024).

The recent amendment to Local Civil Rule 55.2, however, did not institute a new requirement that motions for default judgment include memoranda of law. Rather, for years, parties have been required to submit memoranda of law with motions for default judgment in accordance with the plain language of Local Civil Rule 7.1, which provides that movants must submit memoranda of law for all non-dispositive motions.[10] *See* Loc. Civ. R. 7.1(a), (e) (effective January 2, 2025); Loc. Civ. R. 7.1(a) (effective October 15, 2021); *Dominguez*, 2023 WL 2575224, at *14 ("Local Civil Rule 7.1, which governs motions, applies to motions for a default judgment."). Indeed, long before the recent amendment to Local Civil Rule 55.2, courts in this District have denied motions for default judgment on the grounds that failure to submit a memorandum of law in accordance with Local Civil Rule 7.1 alone warrants such denial. *Diaz Saavedra*, 2022 WL 20655809, at *3 (ruling that plaintiff's "failure to include a memorandum of law 'alone is sufficient to warrant denial of the motion for default judgment'" (quoting *Sarwar*, 2022 WL 21817103, at *4)); *Dominguez*, 2023 WL 2575224, at *15 (collecting cases); *Osmanaj*, 2023 WL 7000935, at *2 (collecting cases); *Yang Ming*, 2021 WL 7908014, at *2 (collecting cases); *Burbon*, 2022 WL 21781622, at *3 (collecting cases); *Hainesport Transportation*, 2024 WL 4457829, at *4

---

[10] There can be no doubt that a motion for default judgment disposes of claims and is thus a dispositive motion.

(collecting cases from before amendment of Local Civil Rule 55.2); *Pompey v. 23 Morgan II, LLC*, 16-cv-2065 (ARR) (PK), 2017 WL 1102772, at \*3 (E.D.N.Y. Feb. 13, 2017), *report & recommendation adopted*, (Order dated Mar. 23, 2017). To that end, Local Civil Rule 55.2 was amended merely to make the preexisting requirement more explicit, given the repeated pattern of litigants failing to submit memoranda of law in moving for default judgment.

To be sure, while well-pleaded factual allegations in a complaint are generally deemed admitted on default, the entry of a default judgment is far from automatic, and failure to submit a memorandum of law is not a mere technicality. Indeed, "[t]he purpose of the filing of the memorandum of law is to inform the [c]ourt and the nonappearing defendants of the theories of law upon which the plaintiff relies." *Dominguez*, 2023 WL 2575224, at \*15 (citing *1077 Madison St., LLC v. New York State Dep't of Taxation & Fin.*, No. 19 Civ. 954 (NGG) (CLP), 2019 WL 7593275 (E.D.N.Y. Nov. 13, 2019), *report & recommendation adopted,* 2020 WL 249006, at \*1 (E.D.N.Y. Jan. 16, 2020)). Without it, the court and the defaulting defendant have no basis for determining "the legal conclusions that a plaintiff believes can be drawn from the facts alleged" nor "how the plaintiff believes that the requirements for a default have been met and how damages can be determined." *Id.* Courts are thus "left to guess as to why [p]laintiffs may be entitled to some relief." *Id.* at \*17. "Such speculation is not a good use of . . . [c]ourts['] resources, and . . . [is not] fair to [d]efendants." *Id.* Failure to submit a memorandum of law "place[s] a significant burden on the [c]ourt" to parse through the filings and the records and conduct research. *Id.*

The case at bar perfectly illustrates the burden placed on courts in attempting to determine motions for default judgment without the benefit of briefing. Indeed, in conducting a cursory examination of the Amended Complaint, the Court has significant questions as to the facial validity

of Plaintiff's federal claims, questions which a memorandum of law submitted on a properly prepared motion for default judgment would have, or should have, addressed.

For example, Count Two asserts a claim for securities fraud pursuant to Rule 10b-5 and § 10(b) of the Securities Exchange Act of 1934. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. Rule 10b-5 provides two bases for liability: subsections (a) and (c) pertain to "scheme liability" claims, and subsection (b) pertains to "misstatement liability" claims. *Sec. & Exch. Comm'n v. Rio Tinto plc*, 41 F.4th 47, 49 (2d Cir. 2022); *S.E.C. v. Kelly*, 817 F. Supp. 2d 340, 343–44 (S.D.N.Y. 2011); *In re Teva Sec. Litig.*, 512 F. Supp. 3d 321, 336 (D. Conn. 2021) (citation omitted). Count Two fails to identify the pertinent subparagraph upon which Plaintiff intends to base her Rule 10b-5 claim, which, alone, demonstrates why movants are required to submit memoranda of law. *See Dominguez*, 2023 WL 2575224, at *17 (discussing burdens on court in having to guess at nature of plaintiffs' claims). However, it can be inferred that Plaintiff intends to allege misstatement liability under Rule 10b-5(b). Specifically, Plaintiff alleges that Segelman and the Line DC Defendants made a series of material misstatements and omissions, which are listed in detail. Am. Compl. ¶¶ 92–93, 95. In sum, Plaintiff alleges that the offering documents she signed contained numerous false terms indicating that her investment would be protected and that would have allowed her to obtain a refund if her I-526 Petition was denied, but that Segelman and the Line DC Defendants failed to disclose their true intentions regarding how they planned to use the invested funds. *See id.* Plaintiff further alleges that these misrepresentations and omissions were made "to induce investors to purchase" membership interests in the Line DC Fund LLC. *Id.* ¶ 95. The other allegations presented for Count Two also touch upon the requisite elements of a misstatement claim under Rule 10b-5(b).[11]

---

[11] "Courts rightly insist that a plaintiff who intends to bring a Rule 10b-5 claim based on both misstatement and scheme liability must do so clearly and specifically." *In re Teva Sec. Litig.*, 512 F. Supp. 3d at 337 (citing *In re Smith Barney*

"To state a claim under Rule 10b–5 for misrepresentations, a plaintiff must allege that the defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 105 (2d Cir. 2007). Thus, Plaintiff must show, *inter alia*, that she relied on the misstatements or omissions of Segelman and the Line DC Defendants in purchasing her membership interest in the Line DC Fund LLC.

However, actions under Rule 10b-5 are subject to a five-year statute of repose, 28 U.S.C. § 1658(b), which is an absolute bar on liability and is not subject to equitable tolling based on when the alleged misconduct was discovered. 28 U.S.C. § 1658(b); *SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Companies L.L.C.*, 829 F.3d 173, 176–77 (2d Cir. 2016); *Merck & Co. v. Reynolds*, 559 U.S. 633, 650 (2010) (noting that "Congress' inclusion in the statute of an unqualified bar on actions instituted '5 years after such violation,' § 1658(b)(2), giv[es] defendants total repose after five years"); *In re Teva Sec. Litig.*, 512 F. Supp. 3d at 332–33 (collecting cases).

There is some tension in case law regarding the triggering event for purposes of the statute of repose. For example, in *Felice v. Westpark Capital, Inc.*, a Southern District court recently ruled that "[t]he statute of repose . . . begins to run 'on the date the parties have committed themselves to complete the purchase or sale transaction.'" No. 23-CV-10138 (JPO), 2024 WL 4349482, at *5 (S.D.N.Y. Sept. 30, 2024) (quoting *Seagrape Invs. LLC v. Tuzman*, No. 19-CV-9736, 2020 WL 5751232, at *14 (S.D.N.Y. Sept. 25, 2020), which, in turn, quoted *Arnold v. KPMG LLP*, 334 F. App'x 349, 351 (2d Cir. 2009)). Courts following this approach have drawn this language from

_____

*Transfer Agent Litig.*, 884 F. Supp. 2d 152, 161 (S.D.N.Y. 2012)). The Second Circuit has expressly rejected "effort[s] to shoehorn . . . [misstatement] allegations into a claim for scheme liability," holding that misstatements and omissions cannot form the "sole basis" for scheme liability. *Rio Tinto*, 41 F.4th at 52. The Court finds that Count Two does not allege a claim for scheme liability, in that the allegations pertain only to misstatements and omissions.

*Arnold v. KPMG LLP*, in which the Second Circuit held that, because the purchase or sale constituted the triggering event, misrepresentations made after the purchase or sale at issue could not render an action timely under the statute of repose. 334 F. App'x at 351. The *Arnold* Court, in turn, drew this language from a prior Second Circuit decision, *Grondahl v. Merritt & Harris, Inc.*, 964 F.2d 1290, 1294 (2d Cir. 1992). *Id.*

Other courts, however, have questioned the continued validity of *Arnold*. In *Colbert v. Rio Tinto PLC*, for example, the court questioned whether *Arnold* still applied in light of the Second Circuit's holding in *Bear Stearns* that the Rule 10b-5 claims at issue were time-barred under the statute of repose because the complaint "fail[ed] to allege that the defendants made any misrepresentations within five years of the filing of [the] complaint." *Colbert*, 392 F. Supp. 3d 329, 337 (S.D.N.Y. 2019), *aff'd on other grounds*, 824 F. App'x 5 (2d Cir. 2020) (quoting *Bear Stearns*, 829 F.3d at 177). Notably, though, the question at issue in *Bear Stearns* was whether *American Pipe* class action tolling applies to § 1658(b)'s statute of repose, not what event triggers the repose clock. *Bear Stearns*, 829 F.3d at 175, 177. In addition to *Bear Stearns*, *Colbert* cited to dictum from a footnote in *Fogel v. Wal-Mart de Mexico SAB de CV*, in which the court rejected an argument under *Arnold* both on the grounds that *Arnold* was inapposite because the misrepresentations at issue were not made after the alleged purchase, and on the grounds that "in the years since *Arnold*, the Second Circuit has made plain its belief that it is the date of the misrepresentation, not the transaction, that matters for purposes of the [Sarbanes-Oxley] statute of repose." *Colbert*, 392 F. Supp. 3d at 337 (quoting *Fogel*, No. 13 CIV. 2282 (KPF), 2017 WL 751155, at *8 n.11 (S.D.N.Y. Feb. 27, 2017), *aff'd on other grounds sub nom. Fogel v. Vega*, 759 F. App'x 18 (2d Cir. 2018)). However, *Fogel* also relied on *Bear Stearns* for its conclusion that

*Arnold* no longer applied. *Fogel*, 2017 WL 751155, at *8 n.11 (citing *Bear Stearns*, 829 F.3d at 177).

Still further courts have applied the rule that "the clock begins running from the date of each alleged misstatement" without acknowledging the apparent split in authority or the holding under *Arnold* that the clock begins running from the date of the purchase or sale. *In re Veon Sec. Litig.*, No. 15-CV-08672 (ALC), 2024 WL 4362728, at *5 (S.D.N.Y. Sept. 30, 2024) (emphasis omitted) (collecting cases); *see also In re Teva Sec. Litig.*, 512 F. Supp. 3d at 331, 335 ("[N]umerous district courts have held that a Repose Clock starts ticking when each alleged misstatement or omission is made." (citing *Kuwait Inv. Office v. Am. Int'l Grp., Inc.*, 128 F. Supp. 3d 792, 808 (S.D.N.Y. 2015))).

However, the Second Circuit has itself recently relied on *Arnold* in a way which reconciles these approaches to some degree. *Integrated Media Res., LLC v. Morley*, No. 22-967, 2023 WL 407535, at *1 (2d Cir. Jan. 26, 2023). Specifically, in *Morley*, the Second Circuit found that claims based on misrepresentations outside the statute of repose were time-barred, thus implying that the triggering event, for such purposes, is the misrepresentation, not the purchase or sale. *Id.* However, the *Morley* Court also found that claims based on misrepresentations made after the relevant purchase could not "be the basis for a claim under Section 10(b) because the statements could not have been 'in connection with the purchase or sale of any security.'" *Id.* (quoting 15 U.S.C. § 78j(b)). The court then relied on *Arnold* in holding that misrepresentations made after a purchase or sale "cannot extend the statute of repose." *Id.* (*Arnold*, 334 F. App'x at 351). While this does contradict, and does not clarify the continued applicability of, the language from *Arnold* and *Grondahl* that the clock "starts to run on the date the parties have committed themselves to complete the purchase or sale transaction," *Arnold*, 334 F. App'x at 351 (quoting *Grondahl*, 964

F.2d at 1292), it at least confirms that misstatements made after a purchase cannot be utilized to assert a Rule 10b-5 claim, whether that be because such misstatements do not meet the required element that they be made "in connection with the purchase or sale of a security" or because the purchase constitutes the triggering event under the statute of repose.

In any event, recent cases within this Circuit have continued to apply *Arnold*'s holding. *Felice*, 2024 WL 4349482, at *5; *see also Liana Carrier Ltd. v. Pure Biofuels Corp.*, No. 14-CV-3406 (VM), 2015 WL 10793422, at *4 (S.D.N.Y. Aug. 14, 2015), *aff'd on other grounds*, 672 F. App'x 85 (2d Cir. 2016) ("[I]t is clear that under *Arnold*, it is the relevant securities transaction, rather than the wrongful conduct of the defendant, that triggers Section 1658(b)'s statute of repose."); *Langhamer v. Johnson*, No. 1:22-CV-05404 (JLR), 2023 WL 6691017, at *10 (S.D.N.Y. Oct. 12, 2023); *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 428 (S.D.N.Y. 2010); *Wiedis v. Dreambuilder Invs., LLC*, 268 F. Supp. 3d 457, 465–66 (S.D.N.Y. 2017); *Arco Cap. Corps. Ltd. v. Deutsche Bank AG*, 949 F. Supp. 2d 532, 544–45 (S.D.N.Y. 2013) (collecting cases and adhering to *Arnold*, rejecting argument that post-purchase misrepresentations begin the repose period). Indeed, *Felice* found that *Arnold* has continued applicability and relied, in part, on *Fogel*, despite *Fogel* having questioned such applicability. *Compare Felice*, 2024 WL 4349482, at *5 n.5 (citing *Fogel*, 2017 WL 751155, at *8 n.11), *with Fogel*, 2017 WL 751155, at *8 n.11. In doing so, the *Felice* court found that *Fogel* had distinguished the facts at hand from those in *Arnold*. *Felice*, 2024 WL 4349482, at *5 n.5 (citing *Fogel*, 2017 WL 751155, at *8 n.11).

The Court finds the rule as articulated in *Felice* instructive, especially considering the recent support in *Morley* for a finding that misstatements made after the relevant purchase cannot form the basis for a Rule 10b-5 motion. *Felice*, 2024 WL 4349482, at *5; *Morley*, 2023 WL 407535, at *1. To be sure, as noted by the Second Circuit in *Morley*, one wonders how it would be

possible to rely on misrepresentations and omissions in purchasing or selling a security when such misrepresentations and omission occurred after the purchase had already been effectuated. *See Morley*, 2023 WL 407535, at *1.

Here, Plaintiff alleges that the misstatements were made "[i]n the Original Signed Offering Documents," which Plaintiff signed on July 30, 2015. Am. Compl. ¶¶ 10, 92; *see also id.* ¶ 93 (alleging that subsequent versions of offering documents were forged "in an apparent effort to mask the misrepresentations present in the Original Signed Offering Documents"). Plaintiff sets forth a list of the various statements in the original offering documents that misrepresented the true intended use of the investment funds. *Id.* ¶ 92. Plaintiff further alleges that Segelman and the Line DC Defendants "failed to disclose that there were three more versions of the offering documents with various material changes that were submitted to the USCIS on behalf of Plaintiff." *Id.* ¶ 93. The three subsequent versions of the offering documents bore various dates between July 31, 2015, and August 2017.[12] *Id.* ¶¶ 16, 18–19, 48, 57, 61–62, 73. Plaintiff alleges that "[t]hese misrepresentations and omissions were made . . . to induce investors to purchase" membership interests in the Line DC Fund LLC. *Id.* ¶ 95.

Plaintiff's allegation identifying the omissions highlights the problem with applying a rule whereby the statute of repose begins to run at the time the omissions are made: how can omissions made in 2017 have been "intended to induce [Plaintiff] to purchase" the interest she purchased in 2015? *Id.* Put another way, how can the omissions have been made "in connection with the purchase or sale of [a] securit[y]" or be omissions "upon which the plaintiff relied" in making that

---

[12] The Amended Complaint does not clearly articulate the date of the first revision, but Plaintiff alleges that her signature was lifted from the document she signed on July 30, 2015, and inserted into that document. Am. Compl. ¶¶ 10, 54. The allegations also establish that the second and third revisions were dated September 2015 and August 2017, respectively. *Id.* ¶¶ 18, 57. The Court thus infers that the first revision must have been created between July 31, 2015, and September 2015.

purchase, such that they can plausibly allege those elements of a Rule 10b-5(b) action? *See ATSI Commc'ns*, 493 F.3d at 105.

To be sure, "misrepresentations that cause one to hold securities that one has already bought, or to forego an opportunity to buy or sell securities, [are not] actionable under" Rule 10b-5. *Felice*, 2024 WL 4349482, at *5 (first citing *Atencio v. Smith Barney, Citigroup, Inc.*, No. 04-CV-5653, 2005 WL 267556, at *4 (S.D.N.Y. Feb. 2, 2005); and then citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 754-55 (1975)); *Lawrence v. Cohn*, 325 F.3d 141, 154 (2d Cir. 2003) (holding that claim that misrepresentations fraudulently induced plaintiffs to forgo purchasing additional shares "did not affect or 'touch' the actual purchase made by plaintiffs" and thus plaintiffs did not "suffer[] an injury as a result of deceptive practices touching [the purchase or] sale of securities" (quoting *Superintendent of Ins. v. Bankers Life and Cas. Co.*, 404 U.S. 6, 12–13 (1971))); *Blue Chip Stamps*, 421 U.S. at 750–55 (holding that misstatements that cause one to decide not to buy shares does not constitute a misstatement "in connection with the purchase or sale" of securities under Rule 10b-5). Thus, regardless of whether post-purchase misstatements fail to establish a requisite element of a Rule 10b-5 claim, or simply are not the triggering event for purposes of the statute of repose, it is clear that post-purchase conduct cannot state a claim under Rule 10b-5 here under *Arnold*, *Blue Chip Stamps*, or both.

Plaintiff thus cannot allege that any post-2015 *retention* of her interest establishes that the misrepresentations or omissions were made "in connection with the purchase or sale" of a security. Put another way, Plaintiff cannot allege that the misstatements or omissions *prevented her* from selling her interest. Although some allegations in the Amended Complaint appear to assert as such, *see* Am. Compl. ¶ 66 (alleging that, because Plaintiff did not discover the forgeries in 2017, "Plaintiff was unable to withdraw from this investment in a timely manner"), these allegations

- 30 -

cannot be credited in assessing whether Plaintiff's Rule 10b-5(b) action states a claim because they do not establish a connection to a purchase or sale of a security under *Blue Chip Stamps*, nor under *Arnold* and subsequent cases applying *Arnold*, such as *Felice*.

In short, the Court first finds that the relevant conduct with respect to the statute of repose, as alleged in the Amended Complaint, includes all conduct up to and including Plaintiff signing the original offering documents on July 30, 2015. None of the alleged misrepresentations or omissions that occurred after this purchase constitute a triggering event thereunder. Plaintiff, however, filed this action on September 12, 2023. *See* ECF No. 1. While Plaintiff alleges that she did not discover the fraudulent conduct until March 2023, Am. Compl. ¶¶ 13, 101, 67, 74, as discussed, discovery has no bearing on the timeliness of the action under the statute of repose because it is not subject to equitable tolling. *See Bear Stearns*, 829 F.3d at 176–77; *Merck*, 559 U.S. at 650; *In re Teva Sec. Litig.*, 512 F. Supp. 3d at 332–33. Moreover, in the alternative, the Court finds that conduct after July 30, 2015, could not have occurred "in connection with the purchase or sale of a security" under *Blue Chip Stamps*. As a result, fraudulent conduct after July 30, 2015, fails to state a claim under Rule 10b-5(b), which requires that a plaintiff allege, *inter alia*, that the misstatement or omission be made in connection with the purchase or sale of a security. *ATSI Commc'ns*, 493 F.3d at 105.

Without memoranda of law, courts are often "left to guess as to why [p]laintiffs may be entitled to some relief." *Dominguez*, 2023 WL 2575224, at *17. Such is the case here. However, even if the Court were to engage in such speculation, it does not appear to salvage Plaintiff's claim. For example, even if one were to assume that Plaintiff was able to establish that she relied on post-July-2015 misstatements and omissions in connection with the purchase or sale of a security (a dubious proposition, for the reasons discussed above), Plaintiff alleges that the last-forged

document was the August 2017 revision. Thus, even were the Court to overlook both *Arnold* and *Blue Chip Stamps* and apply a rule whereby Plaintiff could allege that she relied on an omission that was made in August 2017, and did so in connection with the purchase or sale of a security by deciding not to sell, Plaintiff's claim would *still* be untimely, as it was filed in September 2023, more than six years after the last misrepresentation or omission. To be sure, the Amended Complaint contains no facially discernable allegations regarding post-2017 conduct engaged in by Segelman or the Line DC Defendants other than, perhaps, failing to refund her investment. However, is unclear how refusing to refund her investment would constitute a misstatement or omission. Indeed, according to Plaintiff's account, this would appear to be the only representation that accurately or honestly reflected Segelman and the Line DC Defendants' true intentions. Thus, a facial review of the Amended Complaint renders the apparent conclusion that Count Two was time barred from the outset, and also facially fails to state a claim.[13]

Plaintiff's second federal claim, contained in Count Nine, fares no better. First, the title identifies the claim as an action for a "[v]iolation of [the] Securities Exchange Act," and cites to 15 U.S.C. § 78o and 15 U.S.C. § 78j. Am. Compl. at 23. The former provision is commonly known as § 15 of the Securities Exchange Act. *Ammann v. Sharestates, Inc.*, No. 21-CV-2766 (JS) (ST), 2024 WL 1956237, at *1 n.2, *6 (E.D.N.Y. Mar. 21, 2024), *report & recommendation adopted*, (Order dated June 17, 2024). The latter provision, as previously discussed, is commonly known as § 10(b) of the Securities Exchange Act, which is enforced via the promulgated Rule 10b-5.

---

[13] It is also not clear that this claim is plead with the specificity required under Rule 9 of the Federal Rules of Civil Procedure or the PSLRA, both of which apply to Rule 10b-5(b) actions. *See, e.g.*, *In re Veon Sec. Litig.*, 2024 WL 4362728, at *4–5; *Felice*, 2024 WL 4349482, at *3; *Digilytic Int'l FZE v. Alchemy Fin., Inc.*, No. 20-CV-4650 (ER), 2024 WL 4008120, at *7 (S.D.N.Y. Aug. 30, 2024); *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 195–96 (S.D.N.Y. 2022). Because Plaintiff has submitted no memorandum of law, Plaintiff has failed to explain how these pleading requirements have been met. The Court thus further questions the facial validity of Plaintiff's claims. Indeed, as the Court noted in its factual background above, Plaintiff's allegations are unclear or lacking in detail in a variety of ways.

After citing to these two provisions, Plaintiff presents three allegations pertaining to § 15: (1) that § 15 makes it unlawful for a broker or dealer to purchase or sell, or induce the purchase or sale of, securities unless the broker or dealer is registered[14]; (2) that Plaintiff's membership interest in the Line DC Fund LLC is a security; and (3) that Segelman and the Line DC Manager LLC aided and abetted in the use of the Chinese agency to solicit and sell membership interests in the Line DC Fund LLC, and that Segelman, the Line DC Manager LLC, and the Chinese agency were not registered as brokers or dealers. Am Compl. ¶¶ 153–55. Thus, Plaintiff alleges, Segelman and the Line DC Manager LLC violated § 15(a)(1). *Id.* ¶ 155. Plaintiff then presents a fourth allegation unrelated to § 15: namely, that § 10(b) makes it unlawful "to use or employ any manipulative or deceptive devices in connection with the purchase or sale of any security." *Id.* ¶ 156. Plaintiff then alleges, without any further explanation, that Segelman and the Line DC Manager LLC "used manipulative and deceptive devices to induce Plaintiff into purchasing [a] membership interest" in the Line DC Fund LLC in violation of § 10(b). *Id.*

It is not immediately clear from the Amended Complaint whether Plaintiff is attempting to assert a cause of action under § 15(a)(1), § 10(b), or both. The bulk of the allegations for Count Nine (specifically, three of the four factual allegations) pertain to a failure to obtain broker-dealer registrations in violation of § 15(a)(1). *Id.* ¶¶ 153–55. The last allegation, pertaining to employing manipulative and deceptive devices in violation of § 10(b), does no more than allege the statutory language and allege, in a completely conclusory fashion, that Segelman and the Line DC Manager LLC used manipulative and deceptive devices. *Id.* ¶ 156. The Amended Complaint makes no allegation that a failure to obtain a broker-dealer license constitutes the employment of a manipulative or deceptive device, and makes no effort to identify what manipulative or deceptive

---

[14] While the Amended Complaint, in making this contention, does not identify a subparagraph of § 15, the language alleged directly matches § 15(a)(1). *Compare* Am. Compl. ¶ 153, *with* 15 U.S.C. § 78o(a)(1).

device Segelman and the Line DC Manager are alleged to have used. The Court has found no authority connecting § 15(a)(1) and § 10(b) and is not even certain that Plaintiff is attempting to connect the two, or if the allegation pertaining to § 10(b) was merely inserted in error.

To the extent that Plaintiff is attempting to bring a cause of action under § 15(a)(1), such claim would be entirely without merit. As this Court has discussed at length, there is no private right of action under § 15(a)(1). *Ammann*, 2024 WL 1956237, at *6–9. Plaintiff has provided no basis for recognizing, for the first time in almost forty years of precedent to the contrary, a private right of action thereunder.

To the extent that Plaintiff is attempting to assert a cause of action under § 10(b), the one allegation pertaining to § 10(b) is no more than a threadbare, conclusory recitation of the language of the statute and an assertion that Segelman and the Line DC Manager LLC violated it. Am. Compl. ¶ 156. This precludes a finding that Count Nine plausibly states a claim. *See Henry*, 108 F.4th at 58 (holding that threadbare recitals of elements of cause of action were insufficient to plausibly state claim on motion for default judgment, and citing to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). If Plaintiff is somehow attempting to allege an action under § 10(b) based upon a violation of § 15(a)(1), the Court notes that it would defy logic that one could circumvent years of precedent holding that there is no private right of action for failing to obtain a registration under § 15(a)(1) by merely alleging that such failure is a manipulative or deceptive device or contrivance under § 10(b). Even assuming there were such a cause of action under § 10(b) predicated upon a violation of § 15(a)(1) (and the Court is aware of none), Plaintiff's attempt to allege it would nevertheless be facially defective—the Amended Complaint alleges that Segelman and the Line DC Manager LLC "aided and abetted in the use of Agents to solicit investment[s]." Am. Compl. ¶ 155. However, it is well established that "[a]iding and abetting liability is authorized in actions

brought by the SEC but not by private parties." *Rio Tinto*, 41 F.4th at 55 (first citing *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 162 (2008); and then citing *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 180 (1994)). Moreover, even assuming that Plaintiff presented arguments overcoming all of these hurdles—a dubious proposition—it is still unclear how the action would be timely, given the statute of repose.

The above list is not even exhaustive. The provisions of Rule 10b-5 relating to the use of manipulative or deceptive devices are subsections (a) and (c)—the "scheme liability" provisions. *Id.* at 49; *Kelly*, 817 F. Supp. 2d at 343–44; *In re Teva Sec. Litig.*, 512 F. Supp. 3d at 336 (citation omitted). "To state a claim for scheme liability, a plaintiff must present facts showing '(1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance.'" *In re Turquoise Hill*, 625 F. Supp. 3d at 247 (quoting *Menaldi v. Och-Ziff Cap. Mgmt. Grp.*, 277 F. Supp. 3d 500, 517 (S.D.N.Y. 2017)). Scheme liability typically involves market manipulation. To state a claim for scheme liability under a market manipulation theory, "a plaintiff . . . [must] allege (1) manipulative acts; (2) damage (3) caused by reliance on an assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered by the defendant's use of the mails or any facility of a national securities exchange." *ATSI Commc'ns*, 493 F.3d at 101; *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 177 (2d Cir. 2005) (noting that market manipulation claims are brought pursuant to Rule 10b-5(a) and 10b-5(c)). Market manipulation involves very specific conduct related to manipulating market prices, such as "wash sales, matched orders, or rigged prices." *ATSI Commc'ns*, 493 F.3d at 99–101; *see also Sec. & Exch. Comm'n v. Fiore*, 416 F. Supp. 3d 306, 319 (S.D.N.Y. 2019) (citation omitted).

Multiple of these elements are inadequately plead, especially considering that a Rule 10b-5(a) and (c) scheme liability claim must also be alleged with specificity according to Rule 9(b) of the Federal Rules of Civil Procedure. *ATSI Commc'ns*, 493 F.3d at 101–02. For example, it is not at all clear that an agency in China communicating with Chinese citizens about an investment being offered via private placement is even required to obtain a broker-dealer license under United States federal law in order to do so—and, as discussed, Plaintiff cannot sue Segelman or the Line DC Manager LLC under a theory of aiding and abetting liability. However, most notably, even if Plaintiff alleges that a failure to obtain a broker-dealer license is a manipulative or deceptive device sufficient to allege a scheme, Plaintiff makes no attempt to allege reliance. Count Nine thus also appears to have been time barred from the outset, and to facially fail to state a claim for a variety of reasons. Unless or until Plaintiff presents compelling argument demonstrating that this claim has any merit, the Court finds that this action is barred as a matter of law.

As both of Plaintiff's federal law claims appear to be facially defective, the Court now faces a problem. The Amended Complaint invokes federal question jurisdiction pursuant to 28 U.S.C. § 1331 as a basis for the Court's subject matter jurisdiction over this action. Am. Compl. ¶ 27. While it also invokes diversity jurisdiction, diversity jurisdiction has not been adequately plead. *Id.* ¶¶ 26, 34–43.

First, Plaintiff alleges that "the parties are completely diverse in citizenship and the amount in controversy exceed[s] $75,000.00." *Id.* ¶ 26. This is inarguably conclusory and inadequate. *Kenshoo, Inc. v. Aragon Advert., LLC*, 586 F. Supp. 3d 177, 183 (E.D.N.Y. 2022) (collecting cases); *Doe 1 v. Alexander*, No. 25-CV-2113 (JMF), 2025 WL 863516, at *1 (S.D.N.Y. Mar. 19, 2025). With respect to each defendant, the allegations pertaining to the two individual defendants allege residence, not domicile, *see* Am. Compl. ¶¶ 35, 42, which is impermissible. *Finnegan v.*

*Long Island Power Auth.*, 409 F. Supp. 3d 91, 96, 99–100 (E.D.N.Y. 2019); *Alexander*, 2025 WL 863516, at *1; *Hai Yang Liu v. 88 Harborview Realty, LLC*, 5 F. Supp. 3d 443, 446–47 (S.D.N.Y. 2014). Moreover, the allegations are made "[u]pon information and belief," which is also impermissible. *Wilmington Sav. Fund Soc'y, FSB as trustee of Aspen Holdings Tr. v. Fernandez*, 712 F. Supp. 3d 324, 332 (E.D.N.Y. 2024).

With respect to the corporate defendants, three of which are LLCs and one of which is a PLLC, Plaintiff alleges the states of formation and principal places of business for the three LLCs and alleges only the state of formation for the PLLC. Am. Compl. ¶¶ 36–38, 41. However, this is "inadequate . . . because the citizenship of an LLC has nothing to do with its state of formation or principal place of business; rather, the citizenship of an LLC consists of the imputed citizenship of each one of its members." *Kenshoo*, 586 F. Supp. 3d at 182 (citing *Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012)); *Ocean Units LLC v. Illinois Union Ins. Co.*, 528 F. Supp. 3d 99, 101–02 (E.D.N.Y. 2021); *Hai Yang*, 5 F. Supp. 3d at 447. The Amended Complaint identifies Segelman as the "sole managing member" of two of the LLCs, Am. Compl. ¶ 5, but this does not render Segelman the "sole member." Plaintiff makes no attempt to allege the other members of any of the corporate entities, and has thus inadequately plead their citizenship. *Hai Yang*, 5 F. Supp. 3d at 447 ("[A] [p]laintiff cannot invoke the [c]ourt's diversity jurisdiction where the domicile of an LLC defendant's members is unknown or uncertain. Instead, [the p]laintiff must provide an accurate and complete list of [the LLC defendant's] members and their respective domiciles so that the [c]ourt can establish whether diversity jurisdiction exists."). Moreover, these allegations are also averred to "[u]pon information and belief." Am. Compl. ¶¶ 36–38, 41; *see Wilmington Sav. Fund*, 712 F. Supp. 3d at 332 (diversity allegations cannot be properly averred to "upon information and belief"). Indeed, Plaintiff *cannot*

- 37 -

establish diversity with the Line DC Fund LLC, because Plaintiff alleges that she has an ownership interest in that entity.[15] *Hai Yang*, 5 F. Supp. 3d at 450–51 (collecting cases holding that "[w]here a member of an LLC sues the LLC, that member's citizenship is taken into account for the purposes of determining the LLC's membership"). Plaintiff thus cannot establish diversity jurisdiction over this action.

Earlier in this action, this Court excused the parties from filing corporate disclosure statements on the grounds that subject matter jurisdiction existed under 28 U.S.C. § 1331. *See* ECF No. 40. While federal question jurisdiction appeared to be proper at the time, upon being presented with a motion directed at the merits of Plaintiff's claims and the sufficiency of the Amended Complaint, it has become clear that they likely do not pass muster. The Court thus became obliged to revisit this prior order, pursuant to its continuing obligation to raise defects in subject matter jurisdiction *sua sponte* when the Court identifies them. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[C]ourts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." (citation omitted)); *Hunter v. McMahon*, 75 F.4th 62, 66 (2d Cir. 2023) (same); *Wilmington Sav. Fund*, 712 F. Supp. 3d at 330 (same, and noting that "[c]ourts must exercise heightened vigilance in the default judgment context, where courts lack the benefit of the adversarial process to reveal potential jurisdictional defects"); *Hai Yang*, 5 F. Supp. 3d at 446.

Here, it appears, from a facial review of the Amended Complaint, that Plaintiff's federal claims were defective from the outset. Absent the benefit of a memorandum of law, the Court has, at substantial burden, done research but has found no legal basis for Plaintiff's federal claims.

---

[15] For avoidance of doubt, the factual background detailed above described, at length, Plaintiff's allegations that her investment took the form of a purchase of an ownership interest in the Line DC Fund LLC, and provided a variety of citations to allegations so stating. By way of example, Plaintiff alleges that she "purchased [a] membership interest of $550,000 in the Line DC Fund LLC." Am. Compl. ¶ 4.

*Dominguez*, 2023 WL 2575224, at *17 (discussing burden placed on courts without memoranda of law to do research and parse filings to determine legal bases for claims on motions for default judgment). The Court declines to engage in further guesswork in this regard.

As discussed, a plaintiff's failure to submit a memorandum of law is a procedural defect that, on its own, warrants denial of a motion for default judgment under the case law detailed at length above. However, it is also Plaintiff's burden to establish the Court's subject matter jurisdiction over this action. *Hai Yang*, 5 F. Supp. 3d at 446; *Wilmington Sav. Fund*, 712 F. Supp. 3d at 330; *Finnegan*, 409 F. Supp. 3d at 96–97. Plaintiff has thus far failed to meet that burden.

In sum, the Court has substantial grounds to doubt that a default judgment should be granted, for all of the reasons discussed above. "[B]ecause defaults are generally disfavored and are reserved for rare occasions," the Court must resolve these doubts in favor of the defaulting party. *Henry*, 108 F.4th at 51 (quoting *Enron Oil Corp.*, 10 F.3d at 96). Thus, the Court respectfully recommends that, in addition to the previous grounds for denial, Plaintiff's motion for default judgment also be denied without prejudice for failure to comply with Local Civil Rule 7.1 and for failing to establish the Court's subject matter jurisdiction over this action. This denial without prejudice will provide Plaintiff the opportunity to refile the motion, in a manner that complies with all applicable procedures, and apprise the Court of Plaintiff's asserted basis for its jurisdiction.

### d. *Plaintiff's Motion Is Inadequate in Several Additional Respects, and any Subsequent Motion Should Properly Address These Issues.*

The Court has not, and—as discussed—need not, examine the merits of Plaintiff's motion at this time, given the possibility that the Court lacks jurisdiction over this action. However, in the event that Plaintiff renews this motion and makes an adequate showing to the Court that it properly has jurisdiction over this action, the Court briefly notes the following deficiencies in Plaintiff's instant motion, which should be cured on any subsequent application.

First, a court's inquiry when determining damages on a motion for default judgment is that the Court find that damages have been established with "reasonable certainty." *Credit Lyonnais*, 183 F.3d at 155. This should be determined by a "review of detailed affidavits and documentary evidence." *Cement & Concrete Workers*, 699 F.3d at 234. Here, Plaintiff has submitted a three-page affidavit from Plaintiff, which largely re-avers the facts as alleged in the Amended Complaint, in an action in which the facts are almost entirely predicated on the contents of contractual documents. *See* ECF No. 53-1. Yet, Plaintiff has not submitted a single contractual document to make a showing of reasonable certainty. This Court, were it to have determined that Plaintiff was entitled to the entry of a default judgment, would nevertheless have recommended that no damages be awarded for failure to sufficiently support such damages. To be sure, the Court cannot say with any conviction that the language in the initial offering documents would be unreservedly favorable to Plaintiff's position that she was entitled to a $550,000 reimbursement immediately upon denial of her I-526 Petition. To the extent that the Amended Complaint alleges that the terms of the offering documents state as such, those allegations are inherently damages allegations, which are not deemed admitted on default. Moreover, while Plaintiff's three-page affidavit constitutes evidence, the Court does not find this affidavit sufficient to satisfy the requirement that "*detailed affidavits and documentary evidence*" be submitted to meet Plaintiff's burden in showing damages. *Cement & Concrete Workers*, 699 F.3d at 234 (emphasis added). Any subsequent application should include, at a minimum, include pertinent documentary evidence.

Any subsequent application should also address the circumstances in which courts may properly enter default judgments against some defendants to an action, when other defendants have appeared and are defending such claims. Because Plaintiff failed to submit a memorandum of law, Plaintiff has failed to explain why the entry of default judgment under these circumstances is

proper at this time. The Court has not addressed this issue, but anticipates that this issue will arise in the event a subsequent application is filed.

## II.    The Liu & Bitterman Defendants' Rule 12(b)(6) Motion to Dismiss.

The Liu & Bitterman Defendants' motion to dismiss pursuant to Rule 12(b)(6) requires a determination on the merits of Plaintiff's malpractice claim. *See* ECF No. 72; *Sundown by Farkas v. Aetna Life Ins. Co.*, No. 23CV1905JMAST, 2024 WL 1051165, at *4–5 (E.D.N.Y. Jan. 16, 2024), *report & recommendation adopted*, (Order dated Feb. 6, 2024) (discussing differences between Rule 12(b)(1) jurisdictional determinations and Rule 12(b)(6) merits determinations, and collecting cases). The Court, however, cannot reach a determination on the merits of Plaintiff's claims if it lacks subject matter jurisdiction over this action. *Hylton*, 338 F. Supp. 3d at 272 ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit ([i.e.,] subject-matter jurisdiction)." (citing *Sinochem*, 549 U.S. at 430–31)). Thus, the Court respectfully recommends that the Liu & Bitterman Defendants' motion to dismiss be denied without prejudice at this time. In the event that Plaintiff files a second motion for default judgment and the Court determines that jurisdiction is proper, the Court respectfully recommends that the Liu & Bitterman Defendants be granted leave to refile their motion so that the Court may determine the questions presented therein on the merits.

The Court briefly notes, however, that Plaintiff's malpractice claim appears to be inadequately alleged. Specifically, Plaintiff does not appear to allege "beyond the point of speculation and conjecture, a causal connection between its losses and the defendant's actions," as required for a legal malpractice action under New York law. *Geswaldo v. Gottlieb*, No. 1:24-CV-02543 (AT) (SDA), 2025 WL 763995, at *5 (S.D.N.Y. Jan. 14, 2025), *report & recommendation adopted*, 2025 WL 636091 (S.D.N.Y. Feb. 27, 2025) (quoting *MF Glob. Holdings Ltd. v.*

*PricewaterhouseCoopers LLP*, 199 F. Supp. 3d 818, 830 (S.D.N.Y. 2016)); *see also D'Adamo v. Cohen*, 223 N.Y.S.3d 161, 163 (2d Dep't 2024). To be sure, the entire basis for Plaintiff's action is that Segelman and the Line DC Defendants defrauded her of her investment and refused to refund it. In other words, Plaintiff alleges that Segelman and the Line DC Defendants have not allowed her to withdraw from the investment. Nevertheless, Plaintiff's alleges that, because the Liu & Bitterman Defendants failed to verify the legitimacy of the signatures on the forged documents, she "was unable to withdraw from this investment in a timely manner." Am. Compl. ¶ 66. But Plaintiff's own allegations contradict the assertion that she would have been able to withdraw at all. There is no basis to believe, from the Amended Complaint, that, after the documents had been forged, any earlier discovery of that forgery would have rendered Segelman or the Line DC Defendants more amenable to returning her investment funds. The only argument to the contrary, it appears, would be that earlier discovery would have allowed Plaintiff to file suit before the statute of repose ran—but such argument would defeat subject matter jurisdiction over this action.

Thus, the Liu & Bitterman Defendants' motion to dismiss under Rule 12(b)(6) should be denied without prejudice with leave to renew, until such time that Plaintiff properly establishes the Court's subject matter jurisdiction over this action.

## CONCLUSION

For the reasons set forth above, the Court respectfully recommends that Plaintiff's motion for default judgment be DENIED WITHOUT PREJUDICE with leave to renew to cure the defects described herein. Moreover, the Court respectfully recommends that the Liu & Bitterman Defendants' motion to dismiss be DENIED WITHOUT PREJUDICE with leave to renew if or when jurisdiction is properly established.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

                                             /s/

                                     Steven L. Tiscione
                                     United States Magistrate Judge
                                     Eastern District of New York

Dated: Central Islip, New York
          March 28, 2025