**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

WEIHUA DU,

Plaintiff,

-against-

SHALOM SEGELMAN; THE LINE DC FUND LLC; THE LINE DC MANAGER LLC; THE LINE DC ESCROW LLC; YEVGENY SAMOKHLEB; LIU & BITTERMAN PLLC,

Defendants.

**REPORT AND RECOMMENDATION**
**23-CV-6780 (DG) (ST)**

**TISCIONE, United States Magistrate Judge:**

In 2015, Weihua Du ("Plaintiff") – a Chinese citizen – was presented with an opportunity to invest in a Washington D.C. hotel. Plaintiff was attracted to the investment based on its qualification for the EB-5 program, which rewards foreign investors permanent residency if certain criteria are met. Plaintiff retained Liu & Bitterman PLLC and Yevgeny Samokhleb ("Attorney Defendants") to assist with her immigration petition. Plaintiff's immigration petition was ultimately denied. Nevertheless, Plaintiff's investment was taken by Line DC Fund LLC which refused to refund her. Plaintiff filed the immediate action against several entities alleging her investment was fraudulently solicited and retained. Also named in that suit are the Attorney Defendants for malpractice.

Now before this Court is the Attorney Defendants renewed motion to dismiss under 12(b)(1) and (6). For the reasons set forth below, the motion should be GRANTED.

**BACKGROUND**[1]

I.    **Parties**

---

[1] The Court takes the factual allegations from the Amended Complaint ("Am. Compl.") ECF No. 45, and assumes they are true for purposes of this motion. *See Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 458 (2d Cir. 2019).

Plaintiff Weihua Du is a Chinese citizen. Am. Compl. ¶ 1.

Line DC Fund LLC ("Line DC Fund") is the entity Plaintiff purchased membership/invested in. *Id*. ¶¶ 4–5. Notably, while Line DC Fund is a New York LLC, several members reside in China. *See* Corporate Disclosure Statement, ECF No. 77.

Line DC Manager LLC ("Line DC Manager") manages Line DC Fund. *Id*. ¶¶ 5–7. Line DC Escrow LLC ("Line DC Escrow") was created to hold and disburse money invested in Line DC Fund. *Id*. This Court collectively refers to these three parties as the Line DC Defendants. Defendant Shalom Segelman ("Segelman ") is a New York businessman who operates the Line DC Defendants. *Id*.

Liu & Bitterman PLLC is the firm that Plaintiff retained to assist with her immigration petition. Yevgeny Samokhleb is an attorney at Liu & Bitterman PLLC. *Id*. ¶¶ 13, 41–42.

## II.    Factual Allegations

The facts set forth in Plaintiff's Amended Complaint were discussed extensively in this Court's prior Report and Recommendation and the Court presume familiarity. *See* ECF No. 76. Nevertheless, I offer a brief overview.

Plaintiff is a – presumptively wealthy – Chinese citizen. In 2015, Plaintiff was presented with an opportunity to invest in a hotel in Washington D.C, referred to as the Line D.C. Hotel. Am. Compl. ¶¶ 1–12. The allure of the investment was largely due to its qualification for the EB-5 program: an avenue through which foreign investors attain permanent U.S. residency if certain criteria are met, i.e., $500,000 minimum investment and 10 full time jobs. The EB-5 program also requires an I-526 petition.

The corporate structure of the investment project is, in a word, complex. Segelman created three LLCs that operate together – the Line DC Defendants. Line DC Fund is an investment vehicle

that solicits money from foreign EB-5 investors; Line DC Manager manages Line DC Fund; Line DC Escrow acts as an escrow agent to receive investments on behalf of Line DC Fund. *Id*. ¶ 5. Segelman is the sole manager of the Line DC Defendants. *Id*.

Line DC Fund was created solely to loan money to Yucaipa U.S. Hospitality Partners LLC ("Yucaipa") and YAAF II Parallel (U.S. Hospitality Partners), Inc. ("YAAF"). *Id*. ¶ 6. Yucaipa and YAAF own a controlling share of the Line D.C. Hotel through a series of subsidiaries. *Id*. ¶ 7.

The Line DC Defendants engaged an agency in China ("Chinese Agency") to solicit EB-5 investors for the Line D.C. Hotel. *Id*. ¶ 8. Plaintiff invested in Line DC Fund, purchasing membership for a $500,000 capital contribution and a $50,000 administrative fee. *Id*. ¶¶ 3–4. Based on the original offering documents, Plaintiff believed her investment would remain with Line DC Escrow, only to be released to Line DC Fund if and when her I-526 petition was granted. *Id*. ¶¶ 10–11. Plaintiff personally signed the subscription agreement on July 30, 2015. *Id*. ¶¶ 10, 34, 44, 47–49. While Plaintiff fails to allege how she learned of the investment, it appears likely she was solicited by the Chinese Agency. *Id*. ¶. 8.

The EB-5 Program involves a two-step process: (1) make the requisite investment; and (2) file the I-526 petition with United States Citizenship and Immigration Services ("USCIS"). Plaintiff alleges the Attorney Defendants filed an I-526 Petition on her behalf, but that she neither saw nor signed the petition, and her signature was forged. *Id*. ¶¶ 13–14, 56, 75, 77, 135–37, 140, 143. Although, it is difficult for this Court to ascertain how Plaintiff came to believe her I-526 Petition was being processed by USCIS if she had neither seen nor signed the petition.

Notably, the Amended Complaint is largely devoid of specific allegations regarding the Attorney Defendants' alleged misconduct. The complaint does not allege who contacted the Attorney Defendants, when they did so, or how the Attorney Defendants obtained information to

file the petition. However, Plaintiff alleges she communicated with the Attorney Defendants indirectly, through the Chinese Agency. *Id*. ¶ 13. Plaintiff alleges she paid the Attorney Defendants $15,000 in legal fees but does not explain how she knew to make payment, the manner she paid, or when she paid. *Id*. ¶ 144. Although not explicitly stated, the implication is that this was also done through the Chinese Agency.

Plaintiff alleges the Attorney Defendants were "in charge" of various aspects of the immigration process, including "the interview conducted in the U.S. Embassy located in China," but does not allege she was ever interviewed, how Plaintiff learned of the interview, or when any such interview occurred. *Id*. ¶ 13. There are no further allegations regarding Plaintiff's involvement in the I-526 petition process, except to indicate that, on November 1, 2022, Plaintiff received a letter from USCIS denying her I-526 petition. *Id*. ¶ 12.

Upon denial of her I-526 petition, Plaintiff contacted Segelman and the Line DC Defendants, through the Chinese Agency, to request a refund. *Id*. ¶ 12. The request was denied. *Id*. This is the primary – if not only – allegation of actual injury to Plaintiff.

In February 2023, Plaintiff retained her current counsel to pursue a refund. For the first time Plaintiff obtained a copy of her I-526 petition and subsequent USCIS filings, including responses to a Request for Evidence and a Notice of Intent to Deny that the Attorney Defendants submitted on her behalf. *Id*. ¶¶ 13, 16–17.

Plaintiff discovered the copy of the subscription agreement that was submitted to USCIS differed from the version she signed and contained a forged signature. *Id*. ¶¶ 15. Plaintiff also discovered two subsequent modifications to the subscription agreement that had been submitted, bearing dates of September 2015 and August 2017. *Id*. ¶¶ 15–21. Plaintiff alleges she neither received nor consented to the modifications and alleges the amended agreements contained forged

-4-

signatures. *Id*. ¶¶ 17–20, 23, 48, 57–65. Plaintiff details the differences between the agreements, but it is sufficient to note that the amended version decreased the likelihood she could obtain a refund if her I-526 petition was denied. *Id*. ¶¶ 49– 56. Importantly, the 2017 offering documents state that investors whose I-526 petition are denied (i.e., Plaintiff) will be refunded when the loan matures in 2036. *Id*. ¶ 21. Accordingly, there is a distinct possibility Plaintiff's investment is merely in limbo as opposed to gone and forgotten.

In sum, Plaintiff alleges that Segelman and the Line DC Defendants fraudulently misrepresented the investment and forged her signature. Plaintiff alleges common law fraud, securities fraud, unjust enrichment, breach of contract, breach of fiduciary duty, and civil conspiracy. *Id*. ¶¶ 79–133, 152–158. These allegations, however, are against Segelman, the Line DC Defendants, Yucaipa, YAAF, and Milou Chesapeake Regional Center LLC ("Milou"). Notably, Yucaipa, YAAF, and Milou have been voluntarily dismissed. *See* ECF Nos. 44 & 71. Thus, the only remaining Defendants against which fraud is asserted are the Line DC Defendants and Segelman.

The only allegation against the Attorney Defendants is for one count of legal malpractice. *Id*. ¶¶ 134–144. Plaintiff alleges the "Attorney Defendants failed to provide [Plaintiff] with adequate notice that the attorney- client relationship had terminated" and failed to "diligently communicat[e] with Plaintiff[.]" *Id*. ¶ 137. Plaintiff alleges the Attorney Defendants breached their duty of care by communicating with the Chinese Agency instead of directly with Plaintiff. *Id*. ¶ 139. Plaintiff alleges this allowed Plaintiff's signature to be forged. Specifically, "Attorney Defendants neglected to forward a copy of the I-526 petition filing or any subsequent filings to Plaintiff for her review prior to the submission to USCIS." *Id*. ¶¶ 140–141. It is vital to note,

however, that Plaintiff expressly authorized the Chinese Agency to communicate on her behalf. *See* Agency Contract, ECF No. 99-3.

Plaintiff seeks $565,000 from the Attorney Defendants – the entirety of Plaintiff's investment plus legal fees. *Id*. ¶ 144.

### III.    Procedural History

On September 12, 2023, Plaintiff filed suit. *See* Complaint, ECF No. 1. Segelman and the Line DC Defendants failed to respond, and on December 27, 2023, Plaintiff requested a certificate of default. ECF No. 34. On January 8, 2024, the Clerk entered default against Segelman and the Line DC Defendants. *See* ECF No. 38.

On February 21, 2024, Plaintiff voluntarily dismissed all claims against the Line D.C. Hotel Defendants, Yucaipa, and YAAF. *See* ECF Nos. 43 & 44.

On March 20, 2024, Plaintiff filed her Amended Complaint. *See* Am. Compl. Plaintiff then moved for default judgment for the Amended Complaint without receiving an updated certificate of default. *See* ECF No. 53. On September 11, 2024, Plaintiff voluntarily dismissed the action against Milou. *See* ECF No. 71. On October 1, 2024, the Attorney Defendants responded to the default motion by moving to dismiss. *See* First Motion to Dismiss, ECF No. 72. Both motions were referred to this Court for a Report and Recommendation. On March 28, 2025, this Court issued a Report and Recommendation recommending the default motion be denied for myriad violations of local rules, and failure to establish subject matter jurisdiction. *See* ECF No. 76.

While Plaintiff's failure to comply with local rules was alone sufficient for denial, the opinion discussed at length the inadequacy of Plaintiff's securities fraud claims, and concerns regarding diversity jurisdiction. The Report and Recommendation did not address the merits of the motion to dismiss but stated Plaintiff's malpractice claim appeared to be inadequate. On April 21,

2025, Judge Gujarati adopted the Report and Recommendation in full. *See* Docket Order Dated April 21, 2025.

On May 1, 2025, this Court ordered Plaintiff "to either (1) request a new certificate of default for failure to answer or otherwise respond to the now-operative pleading, or (2) file a letter advising whether Plaintiff intends to voluntarily withdraw this action **by May 19, 2025**." *See* Docket Order Dated May 1, 2025. On May 20, 2025, Plaintiff filed a letter informing the Court she was in the process of re-issuing summonses and would proceed with the Amended Complaint. *See* ECF No. 87.

On the same day, the Attorney Defendants requested a pre-motion conference for their renewed motion to dismiss. *See* ECF No. 86. There, the Attorney Defendants asserted lack of complete diversity. Specifically, the Attorney Defendants asserted "two of the investor members of Defendant The Line DC Fund LLC are citizens and domiciliaries of the People's Republic of China, where Plaintiff Weihua Du likewise has citizenship and is domiciled." *Id*. at 3. In response, Plaintiff filed a letter informing the Court they intended to file a notice of voluntary dismissal against Line DC Fund LLC to maintain complete diversity. *See* ECF No. 94.

Now before this Court is the Attorney Defendants' renewed motion to dismiss under Rule 12(b)(1) and 12(b)(6) for failure to state a claim. *See* Motion to Dismiss ("Mot.") ECF No. 98.

## LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); Fed R. Civ. P. 12(b)(1). In doing so, the Court construes all ambiguities and draws all inferences in Plaintiff's favor. However, under a 12(b)(1) challenge, the "plaintiff must prove the existence of subject matter jurisdiction by a

preponderance of the evidence." *Moser v. Pollin*, 294 F.3d 335, 339 (2d Cir. 2002). In making such a determination this Court is "free to consider materials extrinsic to the complaint." *Id.*

To survive a 12(b)(6) motion, a complaint must contain sufficient facts such that "a claim to relief that is plausible on its face." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the factual allegations allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In doing so, the Court must accept the complaint's well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See Gamm*, 944 F.3d at 458. However, allegations that "are no more than conclusions are not entitled to the assumption of truth." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010); *see Iqbal*, 556 U.S. at 663 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."); *Larsen v. Berlin Bd. of Educ.*, 588 F.Supp.3d 247, 256 (D. Conn. 2022) ("[A] court need not credit conclusory or contradictory allegations.").

## **DISCUSSION**

Before digging into the details, a brief roadmap is appropriate.

For starters, the procedural posture of this case is odd. Plaintiff filed suit against twelve corporate and two individual Defendants, eight of which have been voluntarily dismissed. Among the remaining Defendants are Plaintiff's immigration attorneys. The Attorney Defendants are the only remaining active Defendants on the docket. Plaintiff alleges she was fraudulently induced

into an investment project. Importantly, there are no fraud allegations against the Attorney Defendants, only one count of legal malpractice. The only remaining Defendants against which Plaintiff alleges fraud are the Line DC Defendants and Segelman, all of whom are in default.

This Court raised serious concerns regarding subject matter jurisdiction in a prior opinion, and to date, Plaintiff has done nothing to quelch those concerns. To reiterate: (1) Plaintiff failed to adequately plead securities fraud; and (2) Plaintiff failed to establish complete diversity. Further complicating the matter, the Attorney Defendants are left to argue against federal question jurisdiction on causes of action they are not named in, and asserting lack of diversity on behalf of a Defendant that has neither answered nor otherwise responded to this action.

Plaintiff attempts to maintain subject matter jurisdiction by asserting the securities fraud allegations were adequately plead.[2] Alternatively, Plaintiff argues diversity can be preserved by dropping the non-diverse Defendant – line DC Fund – and maintaining the suit against the Attorney Defendants. The glaring problems with that theory are: (1) *there are no fraud allegations against the Attorney Defendants*; and (2) Line DC Fund is the primary Defendant against whom Plaintiff alleges fraud. Plaintiff cannot maintain a suit that she was fraudulently induced into an investment – against her immigration attorneys who were not party to the investment – and simultaneously dismiss the primary perpetrator of fraud. In an odd attempt to allege fraud against the Attorney Defendants, Plaintiff cites back to her first – now inoperative – complaint, which had a RICO cause of action against all Defendants. Not only is the substance of the first complaint entirely immaterial, but the argument is nonsensical.

---

[2] The baseless and largely conclusory nature of the argument is addressed in detail below.

In sum, Plaintiff fails to establish subject matter jurisdiction, and in a futile attempt to maintain this action, she tries to skirt all blame on her immigration attorneys. To wit, the complaint fails to state a viable claim of attorney malpractice.

## I.    Subject Matter Jurisdiction

As an initial matter, the Attorney Defendants are well within their rights to address subject matter jurisdiction on behalf of the non-responsive Defendants. Such a position, while procedurally odd, "poses no obstacle because the failure of the parties to contest the district court's authority to hear a case does not act to confer federal jurisdiction since a challenge to subject matter jurisdiction cannot be waived and may be raised either by motion or *sua sponte* at any time." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 107 (2d Cir. 1997) (citations and quotation marks omitted) (cleaned up); *see also United States Liab. Ins. Co. v. M Remodeling Corp.*, 444 F. Supp. 3d 408, 409 (E.D.N.Y. 2020).

### a.    Diversity Jurisdiction

District courts may exercise diversity jurisdiction where the amount in controversy exceeds $75,000 (not at issue), and the parties are "citizens of different states" or "citizens of a State and citizens or subjects of a foreign state[.]" 28 U.S.C. § 1332 (a)(1–2).

It is integral to reiterate "the plaintiff, as the party asserting subject matter jurisdiction, has the burden of proving that it exists by a preponderance of the evidence." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 443 (2d Cir. 2019). Here, Plaintiff has failed to present any evidence to support diversity jurisdiction, and bare assertions regarding diversity are "insufficient to show that the diversity requirement is met because, standing alone, it is entirely conclusory." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 60 (2d Cir. 2016). "Allegations like these do not meet the plausibility standard for substantive allegations under *Ashcroft v. Iqbal*, and *Bell Atlantic Corp. v.*

*Twombly*, and there is no reason why jurisdictional allegations – the fundamental building blocks on which the power of the federal courts rests – should be treated more casually." *Kenshoo, Inc. v. Aragon Advert., LLC*, 586 F. Supp. 3d 177, 180 (E.D.N.Y. 2022) (internal citations omitted).

Controlling here, "diversity is lacking . . . where on one side there are citizens and aliens and on the opposite side there are only aliens." *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002). That is precisely the circumstance here.

Plaintiff is a Chinese citizen. Am. Compl. ¶ 1. Two members of Line DC Fund reside in China. *See* ECF No. 77. To determine diversity jurisdiction, limited liability companies "take[ ] the citizenship of each of [their] members." *Novel Energy Sols., LLC v. Pine Gate Renewables, LLC*, 2024 WL 1364702, at *1 (2d Cir. Apr. 1, 2024) (citing *Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012)). As such, Line DC Fund is domiciled in China. Such obviates this Court of subject matter jurisdiction. To be sure, "[d]iversity is not complete if any plaintiff is a citizen of the same state as any defendant, or if a plaintiff and a defendant are both foreign citizens." *Cortlandt St. Recovery Corp. v. Aliberti*, 2014 WL 6907548, at *1 (S.D.N.Y. Dec. 9, 2014) (internal citations omitted). Indeed, Plaintiff concedes to this rationale, stating "Ms. Du's shared Chinese citizenship with The Line DC Fund LLC would become a critical issue." Pl's. Oppo. at 15.

### i.   *Rule 21*

Nevertheless, Plaintiff suggests this Court can retain complete diversity by dropping Line DC Fund under Rule 21.[3] This theory is riddled with errors as Line DC Fund is indispensable.

---

[3] Plaintiff acknowledges she can no longer voluntarily dismiss under Rule 41. *See Milton v. Ocwen Loan Servicing, LLC*, 2020 WL 13568757, at *1 (E.D.N.Y. Feb. 7, 2020). ("A Notice of Voluntary Dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A) operates to dismiss an entire 'action,' not claims within an action.").

True, "it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time[.]" *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989); *see also Call Ctr. Techs., Inc. v. Grand Adventures Tour & Travel Pub. Corp.*, 635 F.3d 48, 51 (2d Cir. 2011). In making such a decision, this Court must "carefully consider whether the dismissal of a nondiverse party will prejudice any of the parties in the litigation." *Id*. at 838.

In doing so, courts look to Rule 19. "Since Rule 21 permits dismissal of a dispensable nondiverse party but does not provide the standard for determining that the party is dispensable, courts apply Rule 19(b) factors for determining when the party is indispensable to make a determination of dispensability for the purpose of Rule 21." *Wheeler v. Citigroup*, 938 F. Supp. 2d 466, 473 (S.D.N.Y. 2013) (citation and quotation marks omitted).

Rule 19 reads "[i]f a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19. To determine whether a party is indispensable, courts consider:

> (1) whether a judgment rendered in a person's absence might prejudice that person or parties to the action, (2) the extent to which any prejudice could be alleviated, (3) whether a judgment in the person's absence would be adequate, and (4) whether the plaintiff would have an adequate remedy if the court dismissed the suit.

*CP Sols. PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 159 (2d Cir. 2009). These factors aim to determine whether, in the absence of a party, the case can move forward in "equity and good conscience." *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 109 (1968). This is a context specific analysis, and "whether a particular lawsuit must be dismissed in the absence of that person, can only be determined in the context of particular litigation." *Id*. at 118.

-12-

Without question, Line DC Fund is indispensable. Judgment rendered in Line DC Fund's absence would significantly prejudice the Attorney Defendants. Plaintiff aims to recover $565,000 from the Attorney Defendants – the entire amount of Plaintiff's investment plus legal fees. Am. Compl. ¶ 144. The inequity in this outcome is evident in the fact Line DC Fund is the entity that Plaintiff invested in. *Id*. ¶4.

To wit, Plaintiff has voluntarily dismissed eight of the original Defendants against whom fraud was alleged. The remaining allegations are against the Line DC Defendants who solicited, retained, and disbursed Plaintiff's investment. Plaintiff's investment in Line DC Fund is the nucleus of this entire dispute.

By Plaintiff's own admission, "Plaintiff purchased membership interest of $550,000 in the Line DC Fund LLC." *Id*. ¶ 4; "The Fund LLC . . . is the limited liability company to which Plaintiff subscribed to in order to be an investor." *Id*. ¶ 36; "On July 30th, 2015, Plaintiff entered into the Original Signed Offering Documents to become the Fund LLC's member based on the solicitation information provided[.]" *Id*. ¶ 48.

There are many such statements that illustrate the indispensable nature of Line DC Fund, as it is mentioned over one hundred times in the Amended Complaint and appears under eight of the nine causes of action. The only cause of action Line DC Fund is not mentioned is count seven – the legal malpractice claim against the Attorney Defendants. Line DC fund is intrinsically intertwined into every aspect of this litigation. To suggest this suit could somehow move forward absent its most ubiquitous Defendant – without prejudice to the remaining defendants – is, at best, inaccurate, and at worst, untethered from reality.

Put succinctly by the Attorney Defendants, "[g]iven that this entire action is predicated on Plaintiff's assertion that she was defrauded into investing in Fund, and that Plaintiff is seeking the

-13-

return of her investment in Fund, it would be nonsensical for Plaintiff to be able to discontinue her claims against Fund while maintaining her claims for legal malpractice against the Attorney Defendants." Mot. at 11.

Plaintiff's support for the request is markedly terse, reading in full:

> Here, The Line DC Fund LLC is not indispensable because there would be no ascertainable prejudice to the fund should it be dismissed, and a judgment in the fund's absence would be adequate, and the Plaintiff in this case will still have the opportunity to pursue The Line DC Fund LLC in state court.

Pf's. Oppo. at 17. The argument is a string of unsupported conclusory statements devoid of any legal citation. It does not provide this Court with any method by which the prejudice could be alleviated. It is unpersuasive. At bottom, Plaintiff cannot maintain jurisdiction for fraud by dismissing the very Defendant against whom the lion's share of fraud is alleged.

b. Federal Question Jurisdiction

This Court's prior Report and Recommendation discussed at length glaring deficiencies regarding federal question jurisdiction. Counts two and nine allege securities fraud pursuant to Rule 10b-5 and § 10(b) of the Securities Exchange Act. 15 U.S.C. §§ 78o and 78j(b); 17 C.F.R. § 240.10b-5. The prior R&R addressed the untimeliness of these claims under the pertinent statue of repose. Those deficiencies remain.

Rule 10b-5 provides two bases for liability: subsections (a) and (c) pertain to "scheme liability" and subsection (b) pertains to "misstatement liability." *S.E.C. v. Rio Tinto plc*, 41 F.4th 47, 49 (2d Cir. 2022); *S.E.C. v. Kelly*, 817 F. Supp. 2d 340, 345 (S.D.N.Y. 2011). Notably, Plaintiff does not identify which theory of liability she intends to pursue. In the absence of any guidance from the Amended Complaint – and subsequent failure to include a memorandum of law with her default judgment motion – this Court was left to infer. Even now, in opposition to dismissal, Plaintiff fails to clearly identify whether she alleges misstatement or scheme liability.

-14-

This Court inferred misstatement liability due to Plaintiff's allegation Segelman and the Line DC Defendants made "material misstatements." Am. Compl. ¶ 92. I will not rehash the entirety of that analysis but provide sufficient basis for dismissal.

### i.    Misstatement Liability

A 10b–5 misrepresentation claim has five elements: "the defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 105 (2d Cir. 2007). Plaintiff alleges the offering documents contained false terms that her investment would be protected, and she would obtain a refund if her I-526 petition was denied. *Id*. ¶¶ 92–93, 95. Plaintiff further alleges these misrepresentations "were made with scienter and were intended to induce" her investment in Line DC Fund. *Id*. ¶ 95. Evidently, Plaintiff's I-526 petition was denied, and her investment was not refunded. Facially, all five elements are plead.

Rule 10b-5, however, is subject to a five-year statute of repose, which is an absolute bar on liability, not subject to equitable tolling. 28 U.S.C. § 1658(b); *SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Companies L.L.C.*, 829 F.3d 173, 176 (2d Cir. 2016). Here, the alleged fraud took place on July 30, 2015, when Plaintiff signed the original offering documents. Am. Compl. ¶¶ 10, 92. Accordingly, the latest date Plaintiff could have brought this action was July 30, 2020. Plaintiff filed her complaint on September 12, 2023, more than three years after the statute of repose expired. *See* Compl. The complaint is untimely.

As this Court highlighted previously, there is some disagreement in this Circuit whether the statute of repose begins to run from the date of the transaction or the date of the misstatement. *See Arnold v. KPMG LLP*, 334 F. App'x 349, 351 (2d Cir. 2009) (Statue of repose "starts to run on

the date the parties have committed themselves to complete the purchase or sale transaction."); *Felice v. Westpark Cap., Inc.*, 2024 WL 4349482, at *5 (S.D.N.Y. Sept. 30, 2024) (same); *but see Fogel v. Wal-Mart de Mexico SAB de CV*, 2017 WL 751155, at *8 (S.D.N.Y. Feb. 27, 2017), *aff'd sub nom. Fogel v. Vega*, 759 F. App'x 18 (2d Cir. 2018) (Citing *Bear Stearns*, 829 F.3d 173, "it is the date of the misrepresentation, not the transaction"); *Colbert v. Rio Tinto PLC*, 392 F. Supp. 3d 329, 337 (S.D.N.Y. 2019), *aff'd*, 824 F. App'x 5 (2d Cir. 2020) (same).

Here, however, the distinction is immaterial, as Plaintiff's claims are barred under both interpretations. The transaction was entered on July 30, 2015, *Id*. ¶ 10. Under the *Arnold* approach, last day to file suit was July 30, 2020. Likewise, the alleged misstatements were made in the original offering documents, achieving the same result under the *Bear Stearns* approach. *Id*. ¶¶ 17–20. Accordingly, Plaintiff finds herself in a jurisprudential dead-end.

Plaintiff asserts such a holding

> essentially sanctions securities fraud against any and every Chinese EB-5 investor for the indefinite future. This is because, as was the case here, the average EB-5 investment petition takes over 5 years to adjudicate by the immigration authorities. With a "statute of repose" that triggers at latest upon the initial securities investment for any given Chinese investor, by definition, if an EB-5 fraudster can keep up their charades until the Chinese investor's EB-5 visa is adjudicated over 5 years later, they will be invincible against accountability because the 5-year statute of repose will have already run. The Court should find such a result unacceptable[.]

Pf's. Oppo. at 19. This argument, while well intentioned, flies in the face of precedent. Statutes of repose, as opposed to statutes of limitations, are not subject to equitable tolling for any reason. *Fed. Hous. Fin. Agency v. UBS Americas Inc.*, 712 F.3d 136, 140 (2d Cir. 2013). This is because "statutes of repose 'create a substantive right in those protected to be free from liability after a legislatively-determined period of time.' " *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 106 (2d Cir. 2013) (quoting *Amoco Prod. Co. v. Newton Sheep Co.,* 85

-16-

F.3d 1464, 1472 (10th Cir.1996)) (cleaned up). To be sure, the Supreme Court has interpreted § 1658(b) as "an unqualified bar . . . giving defendants total repose after five years." *Merck & Co. v. Reynolds*, 559 U.S. 633, 650, (2010). Thus, courts are consistent that "[a] statute of repose presents 'an absolute time limit beyond which liability no longer exists and is not tolled for any reason because to do so would upset the economic balance struck by the legislative body.' " *Amoco Prod. Co.* 85 F.3d at 1472 (quoting *First United Methodist Church of Hyattsville v. U.S. Gypsum Co.*, 882 F.2d 862, 866 (4th Cir. 1989)). While rigid, statutes of repose exist outside of this Court's equity powers. "In fact, a statute of repose may bar a claim even before the plaintiff suffers injury, leaving her without any remedy." *Fed. Hous. Fin. Agency*, 712 F.3d at 140.

Plaintiff makes the unsupported assertion this Court should look to "the last culpable act" to determine whether the suit is time barred. Pf's. Oppo. at 12. This argument "seem[s] to rely on the equitable power of the courts to toll statutes of limitations" – not a statute of repose. *IndyMac*, 721 F.3d at 105. To be sure, "[t]here is no indication in the statutory language that Congress intended the statute of repose to run from the *last* violation, and this Court declines to read such meaning otherwise absent countervailing authority." *Abu Dhabi Inv. Auth. v. Mylan N.V.*, 2021 WL 516310, at *2 (S.D.N.Y. Feb. 10, 2021) (emphasis in original). This Court agrees that it need not expand the statutory window imposed by Congress.

To the extent Plaintiff aims to recover for misstatements made in the amended offering documents, such is impermissible. To reiterate, the amended offering documents were made between September 2015 and August 2017 – after Plaintiff invested in Line DC Fund. *Id*. ¶¶ 17–20, 23, 48, 57–65. Notably, "Plaintiff ha[d] never seen or signed" the amended offering documents. *Id*. ¶ 20; *see also Id*. ¶ 57 ("Plaintiff never received any notice and never signed" the second

-17-

amended offering documents); *Id*. ¶ 61 ("Plaintiff never received any notice and never signed" the 2017 offering documents).

The Supreme Court has held misrepresentations that are not "in connection with the purchase or sale of securities" are not actionable. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 738, (1975).[4] The Second Circuit has followed suit, holding that misrepresentations that do "not affect or 'touch' the actual purchase" of a security do not provide a basis of liability. *Lawrence v. Cohn*, 325 F.3d 141, 154 (2d Cir. 2003). And of course, how could they? The elements of 10b-5 require the misstatement be made in connection with the purchase or sale of a security, *on which the plaintiff relied. See ATSI Commc'ns, Inc.*, 493 F.3d at 105.

I again pose the same question asked in the prior Report and Recommendation: how could Plaintiff have been induced into a transaction by misstatements made in documents she had never seen, that were drafted after the transaction occurred? The argument does not hold water. *See Integrated Media Res., LLC v. Morley*, 2023 WL 407535, at *1 (2d Cir. Jan. 26, 2023) ("claims based on alleged misrepresentations made after its purchase of stock in 2014 cannot be the basis for a claim under Section 10(b) because the statements could not have been 'in connection with the purchase or sale of any security.' ") (quoting 15 U.S.C. § 78j(b)); *see also Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 387 (2014) ("A fraudulent misrepresentation or omission is not made 'in connection with' such a 'purchase or sale of a covered security' unless it is material to a decision by one or more individuals (other than the fraudster) to buy or to sell a 'covered security.' "); *Nathel v. Siegal*, 592 F. Supp. 2d 452, 463 (S.D.N.Y. 2008) ("To violate the anti-fraud provisions of federal securities law, the fraud must be an integral part of the purchase of securities, for

---

[4] Courts have consistently held that "misrepresentations that cause one to hold securities that one has already bought" are not actionable under 10b-5. *Felice*, 2024 WL 4349482, at *5.

example, where it directly involves the consideration for the contract and affects the contemplated consummation of the transaction." (citations and modifications omitted).

      *ii.     Scheme Liability*

As an initial matter, scheme liability and misstatement liability are governed by the same five-year statute of repose, *see* 28 U.S.C. § 1658(b); *Bear Stearns*, 829 F.3d at 175, and since both Plaintiff's theories rely on the same facts, scheme liability is time barred for the above reasons. Nevertheless, this Court will take a moment to address the facial defects.

To reiterate, Plaintiff failed to explicitly allege scheme liability. Even so, this Court briefly addressed it as a courtesy. Plaintiff claims this Court "glosse[d] over the analysis[.]" Pf's. Oppo. at 7. Allow us to provide a more detailed review.

"To state a claim for scheme liability, a plaintiff must present facts showing '(1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance.'" *In re Turquoise Hill Ltd. Securities Litigation*, 625 F. Supp. 3d 164, 247 (S.D.N.Y. 2022) (quoting *Menaldi v. Och-Ziff Cap. Mgmt. Grp.*, 277 F. Supp. 3d 500, 517 (S.D.N.Y. 2017)).

Plaintiff makes the misplaced assertion scheme liability is supported by "[g]oing back to the original complaint" where "Plaintiff alleged an elaborate [RICO] scheme[.]" Pf's. Oppo. at 9. However, quite glaringly, the original complaint is no longer operative. "It is well settled that an amended pleading ordinarily supersedes the original and renders it of no legal effect." *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000); *see also Felix v. Gotham Real Est. Corp.*, 2012 WL 4563097, at *5 (E.D.N.Y. Oct. 2, 2012) ("As a general rule, an amended complaint supersedes the original complaint. Once a plaintiff files an amended complaint, any prior complaints no longer serve any function in the case."); *Starke v. Fuentes*, 2025 WL 1652123,

at *4 (S.D.N.Y. May 8, 2025) ("Each time Plaintiff filed an amended complaint, that complaint became the operative pleading, thereby superseding the claims asserted in the prior complaints."). Thus, Plaintiff cannot support scheme liability by referencing the original complaint.

Further, Plaintiff relies on the same misrepresentations in the offering documents for both misstatement liability and scheme liability. However, Plaintiff cannot proceed with both theories of liability since "[c]ourts rightly insist that a plaintiff who intends to bring a Rule 10b-5 claim based on both misstatement and scheme liability must do so clearly and specifically" – which the Amended Complaint is anything but. *In re Teva Sec. Litig.*, 512 F. Supp. 3d 321, 337 (D. Conn. 2021). To be sure, "the three subsections of Rule 10b–5 are distinct, and courts must scrutinize pleadings to ensure that misrepresentation or omission claims do not proceed under the scheme liability rubric." *In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 161 (S.D.N.Y. 2012).

Plaintiff's assertion scheme liability can be maintained based on misrepresentations in the offering documents is misplaced. True, those who "disseminate false or misleading statements to potential investors with the intent to defraud, can be" liable for both misstatement liability and scheme liability. *Lorenzo v. Sec. & Exch. Comm'n*, 587 U.S. 71, 74 (2019). However, "scheme liability does not exist when 'the sole basis for such claims is alleged misrepresentations or omissions[.]'" *Sec. & Exch. Comm'n v. Rio Tinto plc*, 41 F.4th 47, 51 (2d Cir. 2022) (citing *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 177 (2d Cir. 2005)). Here, Plaintiff offers nothing more than her reliance on misrepresentations and omissions and thus falls well short of establishing a scheme to defraud.

Plaintiff significant reliance on *United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.* is without merit. 2021 WL 1956369, at *1 (S.D.N.Y. May 17, 2021). There, unlike here, the

-20-

Southern District of New York found scheme liability where the SEC alleged fraud that went far beyond misrepresentations and omissions. The court found

> the SEC's case against [the defendants] goes far beyond mere making of misrepresentations. Rather, the Amended Complaint alleges that [the defendants] concealed his misappropriation of investor funds by a variety of devices, such as transferring money to his associate's bank account, which was then paid to him in cash, and by having his associate buy gold bars with the transferred money which were then sold by [the defendants].

*Id*. (cleaned up). The court held "[t]hese allegations suffice to establish scheme liability . . . as they are 'distinct from an alleged misstatement.' " *Id*. at *8 (quoting *S.E.C. v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011)). Such stands in sharp contrast to the case at bar where Plaintiff's newfound scheme liability theory relies wholly on misrepresentations and omissions.

Underlying all of this is Plaintiff's failure to plead with particularity under Rule 9(b). The Second Circuit has made clear that scheme liability "must plead with particularity the nature, purpose, and effect of the fraudulent conduct and the roles of the defendants." *ATSI Commc'ns*, 493 F.3d at 102; *see also Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("A Rule 10b–5 plaintiff must comply with Rule 9(b), which requires that fraud be pled with particularity.) (Citing *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989)). Nevertheless, the discussion is entirely academic since the claim is time barred. *See supra*.

## II.  Failure to State a Claim – Attorney Malpractice

Generally, when a court is without subject matter jurisdiction, they should not adjudicate the merits of the dispute. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007); ("[A] federal court generally may not rule on the merits of a case without first determining that it has [subject matter] jurisdiction over the category of claim in suit"). Even still, assuming arguendo Plaintiff established subject matter jurisdiction, the case should be dismissed against the Attorney Defendants for failure to state a malpractice claim.

-21-

a.   Causation

The thrust of the allegations against the Attorney Defendants is that they unreasonably relied on the Chinese Agency and failed to inform Plaintiff their attorney-client relationship had ended. Specifically, Plaintiff alleges

> Attorney Defendants failed to provide the client with adequate notice that the attorney- client relationship had terminated following the filing of the petition or submitting the responses to Request for Evidence and Notice of Intent to Deny to USCIS, Attorney Defendants' malpractice of failing diligently communicating with Plaintiff should carry on and continue until the termination of the attorney-client relationship.

Am. Compl. ¶ 137. Plaintiff further alleges the Attorney Defendants "never directly contacted Plaintiff" instead relying on the Chinese Agency. *Id*. ¶ 139. Plaintiff continues, "Attorney Defendants neglected to forward a copy of the I-526 petition filing or any subsequent filings to Plaintiff for her review prior to the submission to USCIS." *Id*. ¶ 140. Plaintiff asserts the Attorney Defendants failed to verify her signature before submitting certain documents to USCIS. *Id*. ¶¶ 141–43. Plaintiff concludes, claiming this was the "proximate cause" of Plaintiff's injuries totaling $565,000, the amount of Plaintiff's investment plus legal fees. *Id*. ¶ 144 (cleaned up).

This argument does not go "beyond the point of speculation and conjecture, a causal connection between its losses and the defendant's actions," as required for a legal malpractice action. *MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 199 F. Supp. 3d 818, 830 (S.D.N.Y. 2016). To be sure, "[a] plaintiff must plead actual, ascertainable damages as a result of an attorney's negligence. Mere speculation about a loss resulting from an attorney's alleged omission is insufficient to sustain a prima facie case of legal malpractice" *D'Adamo v. Cohen*, 232 A.D.3d 848, 849–50 (2024) (citation omitted).

Here, however, Plaintiff fails to bridge the gap between her damages, and the alleged misconduct. To be sure, the basis for Plaintiff's action is that Segelman and the Line DC

-22-

Defendants defrauded her and refused to refund her investment. Nevertheless, Plaintiff's alleges that, because the Attorney Defendants failed to verify the legitimacy of the signatures, she "was unable to withdraw from this investment in a timely manner." Am. Compl. ¶ 66. But Plaintiff's own allegations contradict the assertion that she would have been able to withdraw. There is no basis to believe that after the documents had been forged, an earlier discovery of that forgery would have rendered Segelman or the Line DC Defendants amenable to returning her investment.

Indeed, the Attorney Defendants never agreed to assist Plaintiff in retrieving her investment. A review of the controlling retainer reveals as much:

> Attorney makes no guarantees regarding the outcome of the Client's matter. Attorney is not responsible for Client's investment in EB-5 investor programs. Attorney does not guarantee the profitability of any EB-5 investment program. Attorney is not responsible for any refund of payments and investments between Client and any third party.

*See* Retainer at 4, ECF No. 99-2.

b.  Actual Authority

Further, the Attorney Defendants are shielded by actual authority. Plaintiff claims the Attorney Defendants breached their duty by accepting documents provided by the Chinese Agency. Plaintiff alleges "[a]ll the communication was through Shalom and Manager LLC's paid Agents." Am. Compl. ¶ 139. This assertion is demonstrably false, as Plaintiff retained the Chinese Agency herself to act as her intermediary with respect to her immigration petition. *See* Agency Contract. A brief review of the Agency Contract – between Plaintiff and the Chinese Agency – reveals that "[Plaintiff] in order to apply for an EB-5 (Investment Immigration Visa) to the United States, voluntarily entrusts [the Agency] to provide intermediary services and assistance in the application process." *Id*. The contract states that Plaintiff is required to "[p]rovide all required application materials needed for the destination country as requested by [the Agency] in a timely manner,

-23-

ensuring the authenticity and validity of the materials." *Id*. Perhaps most notably, the Chinese Agency is authorized to "prepar[e] visa application materials and submit the visa application on behalf of [Plaintiff]," and "[h]andle communication and procedures with the relevant government agencies during the application process." *Id*.

Plaintiff explicitly authorized the Chinese Agency to communicate and submit documents on her behalf. Now Plaintiff seeks damages for the Attorney Defendants' reliance on that very authorization. While the Attorney Defendants do well to assert apparent authority, this is a case of actual authority.

"Actual authority 'is the power of the agent to do an act or to conduct a transaction on account of the principal which, with respect to the principal, he is privileged to do because of the principal's manifestations to him.' " *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 68 (2d Cir. 2003) (quoting *Minskoff v. Am. Express Travel Related Servs. Co.,* 98 F.3d 703, 708 (2d Cir.1996)). "Actual authority is created by direct manifestations from the principal to the agent, and the extent of the agent's actual authority is interpreted in the light of all circumstances attending these manifestations, including . . . any formal agreement between the parties, and the facts of which both parties are aware." *Peltz v. SHB Commodities, Inc.*, 115 F.3d 1082, 1088 (2d Cir. 1997); *see also ABM Indus. Groups, LLC v. Int'l Union of Operating Eng'rs, Loc.*, 968 F.3d 158, 163 (2d Cir. 2020); *Highland Cap. Mgmt. LP v. Schneider*, 607 F.3d 322, 327 (2d Cir. 2010).

Here, Plaintiff (the principal) expressly authorized the Chinese Agency (the agent) to act and communicate on Plaintiff's behalf throughout the immigration application process. The lion's share of this communication was necessarily through Plaintiff's immigration attorneys. Notably, this relationship was established by a formal agreement between Plaintiff and the Chinese Agency. *See* Agency Contract. Plaintiff cannot now assert the Attorney Defendant's reliance on an agent

she expressly authorized to act on her behalf constitutes misconduct. This is not a case of legal malpractice, but a situation where Plaintiff is remorseful for her I-526 Petition denial.

As a final note, Plaintiff mistakenly conflates fraud alleged against the Line DC Defendants with the Attorney Defendants, asserting "the Attorney Defendants hope to escape liability for the rampant fraud that occurred in this EB-5 project." Pf's. Oppo. at 5. Plaintiff continues, claiming "[t]he Attorney Defendants either actively participated in the scheme, or, at the very least, turned a blind eye[.]" *Id*. at 9. But there are no fraud allegations against the Attorney Defendants in the Amended Complaint. Accordingly, this Court will not entertain claims raised for the first time in Plaintiff's opposition papers. Indeed, such is blatantly impermissible. *See  Louis v. New York City Hous. Auth.*, 152 F. Supp. 3d 143, 158 (S.D.N.Y. 2016) ("plaintiffs cannot use their opposition to the motion to dismiss to raise new claims or arguments.") (citation omitted);  *Cnty. of Rockland v. Triborough Bridge & Tunnel Auth.*, 791 F. Supp. 3d 433, 452 (S.D.N.Y. 2025) (same); *Mathie v. Goord*, 267 F. App'x 13, 14 (2d Cir. 2008) (Dismissing claim raised for first time in opposition because "the amended complaint did not encompass that claim.").

## CONCLUSION

This Court respectfully recommends the District Court GRANT the motion to dismiss for lack of subject matter jurisdiction. In the alternative, the Attorney Defendants should be dismissed from the suit for failure to state a claim.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States

Court of Appeals.  *See Marcella v. Cap. Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

                                                                    /s/
                                    _____
                                                        Steven Tiscione
                                        United States Magistrate Judge
                                            Eastern District of New York

Dated: Central Islip, New York
April 21, 2026

-26-